

**Notice of Service of Process**

**null / ALL**
**Transmittal Number: 16874512**
**Date Processed: 07/12/2017**

| | |
|---|---|
| **Primary Contact:** | Bruce Buttaro<br>Liberty Mutual Insurance Company<br>175 Berkeley Street<br>Boston, MA 02116 |

| | |
|---|---|
| **Entity:** | Liberty Mutual Group Inc.<br>Entity ID Number  2541558 |
| **Entity Served:** | Liberty Mutual Group Inc., d/b/a Liberty Mutual Insurance |
| **Title of Action:** | Mitchell Woodall vs. Liberty Mutual Group Inc., d/b/a Liberty Mutual Insurance |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Santa Fe County District Court, New Mexico |
| **Case/Reference No:** | D-101-CV-2017-01727 |
| **Jurisdiction Served:** | New Mexico |
| **Date Served on CSC:** | 07/12/2017 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Robert C. Gutierrez<br>505-243-5566 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

EXHIBIT A

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/21/2017 4:09:01 PM
STEPHEN T. PACHECO
Ginger Sloan

| SUMMONS | |
|---|---|
| District Court: FIRST JUDICIAL Santa Fe County, New Mexico Court Address: Post Office Box 2268 Albuquerque, NM 87504-2268 Court Telephone: 505-455-8250 | Case Number:  D-101-CV-2017-01727 Judge:  Case assigned to Ortiz, Raymond Z. |
| Plaintiff(s): Mitchell Woodall v. Defendant(s): Liberty Mutual Group, Inc., d/b/a Liberty Mutual Insurance | Defendant Name: LIBERTY MUTUAL GROUP INC., D/B/A LIBERTY MUTUAL INSURANCE Address: c/o Office of the Superintendent of Insurance **Attn: Service of Process on Insurance Companies** PO Box 1689 Santa Fe, NM 87504-1689 |

*(handwritten note:)* c/o Corporation Service Company 123 E. Marcy St. Santa Fe, nm 87501

## TO THE ABOVE NAMED DEFENDANT(S): Take notice that

1.     A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.     You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.     You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.     If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.     You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.     If you need an interpreter, you must ask for one in writing.

7.     You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at  Santa Fe           , New Mexico, this 21st day of  June      , 2017.

Stephen T Pacheco
CLERK OF COURT

By: _____
Deputy

ROBERT C. GUTIERREZ
10090 Coors Blvd NW Ste A
Albuquerque, NM 87114

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO  RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF NEW MEXICO     )
                               )ss

COUNTY OF _____     )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

(*check one box and fill in appropriate blanks*)

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of*

*trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

## USE NOTE

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/23/2017 1:21:06 PM
STEPHEN T. PACHECO
Gloria Landin

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

MITCHELL WOODALL,

      Plaintiff,

vs.                      No. D-101-CV-2017-01727

LIBERTY MUTUAL GROUP, INC.,
d/b/a LIBERTY MUTUAL INSURANCE,

      Defendant.

## AMENDED COMPLAINT FOR UNINSURED/ UNDERINSURED MOTORIST BENEFITS

    COMES NOW the Plaintiff, Mitchell Woodall, by and through his attorneys of record, Will

Ferguson & Associates (Robert C. Gutierrez) and for his Complaint for Uninsured/Underinsured

Motorist Benefits against Defendant Liberty Mutual Group, Inc., states as follows:

### JURISDICTION AND VENUE

1.    Plaintiff Mitchell Woodall is a resident of Edgewood, New Mexico, Santa Fe County and is

an adult over 18 years of age and is otherwise competent to bring this lawsuit.

2.    Defendant Liberty Mutual Group, Inc., doing business as "Liberty Mutual Insurance"

(hereinafter "Defendant Liberty Mutual") is a foreign insurance company incorporated in

Massachusetts doing business throughout the State of New Mexico and is otherwise subject to the

jurisdiction of this Court pursuant to § 38-3-1 (A), (F) NMSA 1978 (2005).

3.    The automobile accident that is the subject of this complaint occurred on August 6, 2016, on

NM State Road 22 at approximately Milepost # 5.5 in New Mexico.

4.    This Court has jurisdiction to hear these claims and venue is properly before this Court.

## GENERAL ALLEGATIONS COMMON TO
## ALL COUNTS OF THIS COMPLAINT

5.      On August 6, 2016, a motorist hit Plaintiff while he was riding his 2015 Harley motorcycle,

Vin # 1HD1PXN13FB958247.   The impact knocked him off his motorcycle and he sustained

significant injuries as a result of being struck by the underinsured driver.

6.      As a direct and proximate result of the underinsured motorist's negligence, Plaintiff suffered

personal injuries, damage and loss, including but not limited to, past and future medical expenses,

permanent loss of function, emotional distress, loss of ability to enjoy life and participate in hobbies

and recreational activities, pain and suffering, discomfort, inconvenience and other damages.

7.      At the time of the subject accident the underinsured motorist was driving at a recklessly high

rate of speed calculated to be 102 MPH in a 55 MPH zone, when she lost control of her car sliding

into Plaintiff's motorcycle. On February 17th, 2017 the Sandoval County Grand Jury of the State of

New Mexico returned a nine count criminal indictment against said underinsured motorist including

Count#2 being a  3rd degree felony for great bodily injury by vehicle in the unlawful operation of a

motor vehicle while under the influence of intoxicating liquor or any drug or in a reckless manner

because of the underinsured motorist's outrageous reckless behavior that directly caused Plaintiff's

injuries. Under New Mexico law Liberty Mutual is also legally responsible for punitive damages,

based upon said underinsured motorist's outrageous and reckless conduct.

8.      At the time of the subject motor vehicle crash, the underinsured motorist did have liability

insurance coverage but it was inadequate to fully compensate Plaintiff.

## COUNT I: UNDERINSURED MOTORIST CLAIM
## AGAINST DEFENDANT LIBERTY MUTUAL INSURANCE

9.      Plaintiff re-alleges all preceding paragraphs of this complaint as though set forth fully herein.

10.     Defendant Liberty Mutual is properly joined as a party by its insured, the Plaintiff, and is otherwise subject to the jurisdiction of this Court pursuant to § 38-3-1 (A), (F) NMSA 1978 (2004).

11.     At all times material hereto, Defendant Liberty Mutual was the insurance company that provided uninsured/underinsured motorist coverage to its insured, Plaintiff Woodall, under policy number #A02-298-021072-60 6 8 issued pursuant to § 66-5-301 et seq NMSA (1978).  The certified copy of said policy was emailed on September 13, 2016 to Plaintiff's counsel's office by Ms. Luann Mueller of Liberty Mutual's "Policy Copy Support" and is Attachment #1 attached hereto.

12.     Said Policy #A02-298-021072-60 6 8 provides liability coverage at "100,000 each person / 300,000 each accident" on both of Plaintiff's cars with liability coverage billed separately for each car. On the same "Policy Declaration" page the certified policy also state the insured has Uninsured Motorists coverage of "$25,000 each person/$50,000 each accident" with a separate premium for such UM coverage charged/billed separately for each car.

13.     However, this certified Liberty Mutual Policy #A02-298-021072-60 6 8 also does NOT contain any written and knowing signed rejection/waiver of UM/UIM coverage equal to the liability limits of "100,000 each person / 300,000 each accident", which is required under New Mexico law. Accordingly, Plaintiff requests the Court reform said Policy's UM/UIM limits to match the liability coverage limits of "100,000 each person / 300,000 each accident" AND such UM coverage of both cars also stacks. Thus, the Plaintiff has $200,000 of UM/UIM coverage under his cars Policy #A02-298-021072-60 6 8, Attachment #1.

14.     At all times material hereto, Defendant Liberty Mutual was the insurance company that provided uninsured/underinsured motorist coverage to its insured, Plaintiff Woodall, under policy# A-02-298-251148-10 6 2 issued pursuant to § 66-5-301 et seq NMSA (1978).  The certified copy

*Page 3 of 5*

of said policy was emailed on September 13, 2016 to Plaintiff's counsel's office by Ms. Luann Mueller of Liberty Mutual's "Policy Copy Support" and is Attachment #2 attached hereto.

15.    Said Policy #A02-298-251148-10 6 2 provides for liability coverage at "100,000 each person / 300,000 each accident" on both of Plaintiff's motorcycles with liability coverage charged separately to each bike.    The "Policy Declarations" of the Liberty Mutual certified policy also simply states that: "Uninsured Motorists has Been Reject".

16.    However, there is NO valid signed rejection/waiver of UM coverage form attached to said certified Policy as required by New Mexico law. Accordingly, New Mexico's UM/UIM law requires the Court reform said motorcycle  policy #A-02-298-251148-10 6 2 so that the UM limits of coverage match the $100,000 per person liability limits AND the UM coverage of both motorcycles stack, resulting in $200,000 of UM/UIM coverage for Mr. Woodall under Policy #A02-298-251148-10 6 2.

17.    The above described policies were effective on August 6, 2016, the date of the subject motor vehicle crash when a car negligently crashed into Plaintiff's motorcycle.

18.    Plaintiff was a first party insured.  There were two vehicles insured under the subject policy #A-02-298-021072-60 6 8 and two motorcycles insured under the subject policy #A-02-298-251148-10 6 2 on August 6, 2016, carrying liability and uninsured/underinsured motorist coverage of $100,000    each    vehicle    for    a    total    combined    "stacked"    coverage    of    $400,000    in uninsured/underinsured motorist coverage for the subject motor vehicle crash.

19.    On the date of the subject motor vehicle crash, the underinsured motorist had liability insurance coverage of $25,000 available to compensate Plaintiff and other injured parties for injuries and damages.  The amount of $4,100 was recovered with the permission of Liberty Mutual.

*Page 4 of 5*

20.     Underinsured motorist is an uninsured motorist as described and defined in the uninsured/underinsured motorist policies issued by Defendant Liberty Mutual to Plaintiff Woodall.

21.     Under the terms of the subject insurance policies, Defendant Liberty Mutual is liable to pay Plaintiff's damages, which Plaintiff is legally entitled to recover from the underinsured motorist because Plaintiff sustained bodily injuries caused by an accident, said accident having been caused by the underinsured motorist.

22.     Defendant Liberty Mutual has failed to tender the undisputed value of the case in violation of New Mexico law.

WHEREFORE, Plaintiff prays for an Order of the Court giving judgment against Defendant Liberty Mutual in an amount reasonable to compensate Plaintiff for his injuries, damage and loss, for punitive damages and awarding Plaintiff the costs of this litigation, pre and post judgment interest and granting such further relief as may be deemed just and proper.

Respectfully submitted;

WILL FERGUSON & ASSOCIATES

*/s/ Robert C. Gutierrez*
ROBERT C. GUTIERREZ
10090 Coors Blvd NW Ste A
Albuquerque, NM 87114
Phone: (505)243-5566
Fax: (505)897-2279
bob@fergusonlaw.com

 **Liberty Mutual.**
**INSURANCE**

Liberty Mutual Insurance
350 E 96th Street
Indianapolis, IN 46240
Telephone: 317-581-6804

September 13, 2016

Zach Weichman
PO Box 7230
London, KY 40742

Insured Name:    VIVIAN L WOODALL
                MITCHELL F WOODALL
Policy Number:    AO229802107260
Claim Number:    034189020
Effective Date:    5/26/2016

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course of its business.

Sincerely,

Luann Mueller
Policy Copy
Support

LM
Enclosures

PL Policy/Dec Request

**Attachment #1**



# Policy Declarations
## A summary of your auto insurance coverage



Reason for your new declarations page: Policy Change 01
● Eliminate Vehicle 2

Effective date of this change: 05/26/2016





**ACTION REQUIRED:**

Please review and keep for your records.

### INSURANCE INFORMATION

| | |
|---|---|
| Named Insured: | Vivian L Woodall<br>Mitchell F Woodall |
| Policy Number: | AO2-298-021072-60 6  8 |
| Policy Period: | 05/09/2016 -05/09/2017  12:01 AM standard time at the address of the Named Insured as stated below. |
| Mailing Address: | 22 Fire Lizard Lane<br>Edgewood NM 87015 -8022 |
| Affinity Affiliation: | Sandia Laboratory Federal Credit Union |

**QUESTIONS ABOUT YOUR POLICY?**
By Phone
For Service:
1-800-225-7014

Liberty Mutual
PO Box 970
Mishawaka, IN 46546

### Vehicles Covered by Your Policy

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2006 | BUICK | LACROSSE | 2G4WD582761268859 |
| 3 | 2007 | VOLVO | XC90 | YV4CZ852771394013 |

To report a claim
By Phone
1-800-2CLAIMS
(1-800-225-2467 )

### Coverage Details

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the indicated coverage for that vehicle.

THIS IS NOT YOUR AUTO INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.

### Coverage Information

Premium Adjustment from 05/26/2016 to 05/09/2017

VEH 2
$663 CR

Total Adjustment: $663 .00CR

| Total Annual Policy Premium | $1,985.00 |
|---|---|
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

| COVERAGE | LIMITS | | PREMIUM PER | |
|---|---|---|---|---|
| | | | VEHICLE VEH 1 | VEH 3 |
| **A. Liability** | | | $580 | $455 |
| Bodily Injury | $ 100,000 | Each Person | Yes | Yes |
| | $ 300,000 | Each Accident | | |
| Property Damage | $ 50,000 | Each Accident | | |
| **B. Medical Payments** | | | | |
| | $ 5,000 | Each Person | $85 | $67 |



## Coverage Information (continued)

| COVERAGE | LIMITS | | PREMIUM PER | | |
|---|---|---|---|---|---|
| | | | VEHICLE VEH 1 | | VEH 3 |



**Policy Number:**
AO2-298-021072 -60 6 8
Declarations effective:
05/26/2016

### C  Uninsured Motorists

| | | | | | |
|---|---|---|---|---|---|
| Uninsured Motorists | $ | 25,000 | Each Person | $165 | $165 |
| Bodily Injury | $ | 50,000 | Each Accident | | |
| Property Damage | $ | 25,000 | Each Accident | | |

### D  Coverage for Damage to Your Auto

| | | | |
|---|---|---|---|
| Collision | | | $250 |
| Actual Cash Value Less Deductible Shown | | | |
| Veh 3 $1000 | | | |
| Other Than Collision | | $117 | $101 |
| Actual Cash Value Less Deductible Shown | | | |
| Veh 1 $250 | Veh 3 $1000 | | |

| | | |
|---|---|---|
| Annual Premium Per Vehicle: | $947 | $1,038 |

| | |
|---|---|
| **Total Annual Policy Premium** | **$1,985.00** |
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

## Discounts and Benefits

Your discounts and benefits have been applied to your Total Annual Policy Premium.

### VEHICLE DISCOUNTS

| | VEH 1 | VEH 3 |
|---|---|---|
| Anti-Lock Braking System | Yes | Yes |
| Passive Restraint - Requires Med Pay (Motorized Seat Belts and/or Air Bags) | Yes | Yes |
| Anti-Theft Device(s) | Yes | Yes |

### POLICY DISCOUNTS

- TruStage™ Auto and Homeowners Insurance Program
- Multi-Car
- Preferred Auto Rating Plan (Preferred Driver)

## Driver Information

| DRIVER NAME | LICENSE NUMBER | DATE OF BIRTH | STATE |
|---|---|---|---|
| Vivian L Woodall | 108730056 | 08/11/1958 | NM |
| Mitchell F Woodall | 107724257 | 03/03/1959 | NM |

To ensure proper coverage, please contact us to add drivers not listed above.



## Safe Driver Insurance Plan

No Charges Apply - SCO

## Endorsements - Changes to Your Policy

Amendment of Policy Provisions - New Mexico  AS2162  06  07
Automobile Amendatory Endorsement  AS2258  08  06
Amendment of Policy Definitions  AS2344  04  08
Uninsured Motorists Coverage - New Mexico  AS3616  05  08
Split Liability Limits  PP 03 09 04 86
Split Uninsured Motorists Limits - New Mexico  PP 04 33 12 89
Mexico Extension Endorsement  AS1006  12  89
Nuclear, Bio-Chemical & Mold Exclusion Endorsement  AS2228  07  05
Automatic Termination Endorsement  AS1046  12  89
Coverage For Damage To Your Auto Exclusion Endorsement  PP 13 01 12 99
Notice to Others if Cancellation Occurs  AS1019  12  89
Membership in Liberty Mutual Holding Company Inc.  2340 e

Policy Number:
AO2-298-021072 -60 6 8
Declarations effective:
05/26/2016

LibertyGuard Auto Policy Declarations  provided and underwritten by
Liberty Mutual Fire Insurance Company , Boston, MA.

This policy, including endorsements listed above,
is countersigned by:

_____
Authorized Representative

_____
President

_____
Secretary



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 300 offices throughout the United States. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance.  Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**                          Liberty Mutual Insurance Group

AUTO 3422 Ed. 6-94 R1

**LIBERTYGUARD AUTO POLICY**



**QUICK REFERENCE**

**DECLARATIONS PAGE**

Your Name and Address
Your Auto or Trailer
Policy Period
Coverages and Amounts of Insurance

|  | Beginning On Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |

**PART A - LIABILITY COVERAGE**

| | |
|---|---|
| Insuring Agreement | 2 |
| Supplementary Payments | 2 |
| Exclusions | 2 |
| Limit of Liability | 3 |
| Out of State Coverage | 3 |
| Financial Responsibility | 4 |
| Other Insurance | 4 |

**PART B - MEDICAL PAYMENTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 4 |
| Exclusions | 4 |
| Limit of Liability | 4 |
| Other Insurance | 5 |

**PART C - UNINSURED MOTORISTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 5 |
| Exclusions | 5 |
| Limit of Liability | 6 |
| Other Insurance | 6 |
| Arbitration | 6 |

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

| | |
|---|---|
| Insuring Agreement | 7 |
| Transportation Expenses | 7 |
| Exclusions | 8 |
| Limit of Liability | 9 |
| Payment of Loss | 9 |
| No Benefit to Bailee | 9 |
| Other Sources of Recovery | 9 |
| Appraisal | 9 |

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS** ............. 10

**PART F - GENERAL PROVISIONS**

| | |
|---|---|
| Bankruptcy | 10 |
| Changes | 10 |
| Fraud | 10 |
| Legal Action Against Us | 10 |
| Our Right To Recover Payment | 11 |
| Policy Period And Territory | 11 |
| Termination | 11 |
| Transfer Of Your Interest In This Policy | 12 |
| Two Or More Auto Policies | 12 |

**\*MUTUAL POLICY CONDITIONS** ...................... 12

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**Liberty Mutual.**
INSURANCE

## AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

B. "We," "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup or van that:

(1) has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2) is not used for the delivery or transportation of goods and materials unless such use is:

(a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

(b) for farming or ranching.

This provision (J.2.) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;     d. loss; or
b. repair;        e. destruction.
c. servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.



Liberty Mutual. INSURANCE

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

**A.** We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that "insured."

3. For "property damage" to property:
   a. rented to;
   b. used by; or
   c. in the care of;
   that "insured."
   This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:
   a. selling;           d. storing; or
   b. repairing;         e. parking;
   c. servicing;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:
   a. you;
   b. any "family member;" or
   c. any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in exclusion A.6.
   This exclusion (A.7.) does not apply to



the maintenance or use of a:

a. Private passenger auto;

b. Pickup or van that:

(1) You own; or

(2) You do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

a. breakdown;  d. loss; or
b. repair;  e. destruction; or
c. servicing;

c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

9. For "bodily injury" or "property damage" for which that "insured:"

a. is an insured under a nuclear energy liability policy; or

b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. American Nuclear Insurers;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

a. Has fewer than four wheels; or

b. Is designed mainly for use off public roads.

This exclusion (B.1.) does not apply:

a. While such vehicle is being used by an "insured" in a medical emergency; or

b. To any "trailer."

2. Any vehicle, other than "your covered auto," which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (B.3.) does not apply to you while you are maintaining or

"occupying" any vehicle which is:

a. owned by a "family member;" or

b. furnished or available for the regular use of a "family member."

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.



**Liberty Mutual.**
INSURANCE

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and

2. Sustained by an "insured."

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member:"

   a. while "occupying;" or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

### EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by you; or

   b. furnished or available for your regular use.

6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. discharge of a nuclear weapon (even if accidental);

   b. war (declared or undeclared);

   c. civil war;

   d. insurrection; or

   e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

    a. competing in; or

    b. practicing or preparing for;

    any prearranged or organized racing or speed contest.

### LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"



2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured;" and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. you or any "family member;"

   b. a vehicle which you or any "family member" are "occupying;" or

   c. "your covered auto."

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

### EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying," or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured:"

1. If that "insured" or the legal



representative settles the "bodily injury" claim without our consent.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

**ARBITRATION**

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured;"

from the owner or operator of an "uninsured motor vehicle," then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the



minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision," only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provide d for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail. Water or flood;
7. Malicious mischief or vandalism
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

a. breakdown;
b. repair;
c. servicing;
d. loss; or
e. destruction.

### TRANSPORTATION EXPENSES

In addition, we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Temporary transportation expenses incurred by you in the event of a loss to "your covered auto." We will pay for such expenses if the loss is caused by:

a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto." We will pay for loss of use expenses if the loss is caused by:

a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto."

b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto."

If the loss is caused by a total theft of "your covered auto" or a "non-owned auto," we will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

If the loss is caused by other than theft of a "your covered auto" or a "non-owned auto," we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto."



**EXCLUSIONS**

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. discharge of any nuclear weapon (even if accidental);

   c. war (declared or undeclared);

   d. civil war;

   e. insurrection; or

   f. rebellion or revolution.

4. Loss to:

   a. Any electronic equipment designed for the reproduction of sound, including, but not limited to:

      (1) radios and stereos;

      (2) tape decks; or

      (3) compact disc players;

   b. Any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

      (1) citizens band radios;

      (2) telephones;

      (3) two-way mobile radios;

      (4) scanning monitor receivers;

      (5) television monitor receivers;

      (6) video cassette recorders;

      (7) audio cassette recorders; or

      (8) personal computers;

   c. tapes, records, discs, or other media used with equipment described in a. or b.; or

   d. any other accessories used with equipment described in a. or b.

   This exclusion (4.) does not apply to:

   a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

      (1) The equipment is permanently installed in "your covered auto" or any "non-owned auto;" or

      (2) The equipment is:

         (a) Removable from a housing unit which is permanently installed in the auto;

         (b) Designed to be solely operated by use of the power from the auto's electrical system; and

         (c) In or upon "your covered auto" or any "non-owned auto;"

      at the time of the loss.

   b. any other electronic equipment that is:

      (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

      (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

5. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

   a. acquire during the policy period; and

   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

   a. awnings or cabanas; or

   b. equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or location of radar or laser.



10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   a. special carpeting and insulation, furniture or bars;

   b. facilities for cooking and sleeping;

   c. height-extending roofs; or

   d. custom murals, paintings or other decals or graphics.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. selling;     d. storing; or

   b. repairing;    e. parking;

   c. servicing;

   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

13. Loss to "your covered auto" or any "non-owned auto," located inside a facility designed for racing, for the purpose of:

   a. competing in; or

   b. practicing or preparing for;

   any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

   a. you; or

   b. any "family member;"

   if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member," pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a trailer is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto;"

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:



1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:
   a. to physical exams by physicians we select. We will pay for these exams.
   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:
   a. medical reports; and

b. other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium

adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all



the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

**OUR RIGHT TO RECOVER PAYMENT**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

**POLICY PERIOD AND TERRITORY**

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

**TERMINATION**

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or·

b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. at least 10 days notice:

   (1) if cancellation is for nonpayment of premium; or

   (2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. at least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. for nonpayment of premium; or

   b. if your driver's license or that of:

   (1) any driver who lives with you; or

   (2) any driver who customarily uses "your covered auto;"

   has been suspended or revoked. This must have occurred:

   (1) during the policy period; or

   (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. if the policy was obtained through material misrepresentation.

B. **Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

C. **Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your cove-red auto," any similar insurance provided by



this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto."

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

PRESIDENT

SECRETARY

Includes Copyrighted material of Insurance Services Office, Inc.,
with its permission.
Copyright, Insurance Services Office, Inc., 1994



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMENDMENT OF POLICY PROVISIONS - NEW MEXICO

AS 2162 06 07
(PP 01 96 06 94)

**I. Part A - Liability Coverage**

**A.** Paragraph **A.** of the **Insuring Agreement** is replaced by the following:

**A.** We will pay damages, other than punitive or exemplary damages, for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.  Damages include prejudgment interest awarded against the "insured".  We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.  We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** Exclusion **A.3.** is replaced by the following:

We do not provide Liability Coverage for any "insured":

**3.** For "property damage" to property:
a. Rented to;
b. Used by; or
c. In the care of;
that "insured":
This Exclusion (A.3.) does not apply to "property damage" to a:
a. Residence or private garage; or
b. Vehicle you do not own if:
(1) A licensed automobile dealer provides the vehicle without charge to you or a "family member":
(a) For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;
(b) To demonstrate the vehicle; or
(c) As a promotional or courtesy vehicle; or
(2) A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or without charge, to you or a

"family member":
(a) For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;
(b) To demonstrate the vehicle; or
(c) As a promotional or courtesy vehicle; and
The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:
**PRIMARY LIABILITY ASSIGNMENT**
In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

**C.** The **Other Insurance** Provision is replaced by the following:
**OTHER INSURANCE**
If there is other applicable liability insurance, we will pay only our share of the loss.  Our share is the proportion that our limit of liability bears to the total of all applicable limits.  Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
However, we will provide primary insurance for a vehicle you do not own if:
1. A licensed automobile dealer provides the vehicle without charge to you or a "family member":
a. For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;
b. To demonstrate the vehicle; or
c. As a promotional or courtesy vehicle; or
2. A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or


**Liberty Mutual.**
INSURANCE

without charge, to you or a "family member":

**a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

**b.** To demonstrate the vehicle; or

**c.** As a promotional or courtesy vehicle; and

The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:

> **PRIMARY LIABILITY ASSIGN-MENT**
>
> In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

## II. Part D - Coverage For Damage To Your Auto

Paragraph **C.** of the **Insuring Agreement** is replaced by the following:

"Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   **a.** Breakdown;
   **b.** Repair;
   **c.** Servicing;
   **d.** Loss; or
   **e.** Destruction.

However, "non-owned auto" does not include any vehicle you do not own if:

1. A licensed automobile dealer provides the vehicle without charge to you or a "family member":

   **a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

   **b.** To demonstrate the vehicle; or

   **c.** As a promotional or courtesy vehicle; or

2. A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or without charge, to you or a "family member":

   **a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

   **b.** To demonstrate the vehicle; or

   **c.** As a promotional or courtesy vehicle; and

The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:

> **PRIMARY LIABILITY ASSIGNMENT**
>
> In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

## III. PART F - GENERAL PROVISIONS

Part F is amended as follows:

**A.** The Termination provision is amended as follows:

**TERMINATION**

The Nonrenewal section is replaced by the following:

**Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is less than 6 months, we will have the right not to renew or continue every 6 months, beginning 6 months from its original effective date.

**B.** The following is added to the Two Or More Auto Policies provision:

**TWO OR MORE AUTO POLICIES**

1. This provision does not apply to Uninsured Motorists Coverage.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1993



**AUTOMOBILE AMENDATORY ENDORSEMENT**                                              AS 2258 08 06

**I. DEFINITIONS**
The **Definitions** section is revised as follows:
  **A.** The definition of **Your Covered Auto** is replaced with the following:
  **"Your Covered Auto" means:**
  **1.** Any vehicle shown in the Declarations.
  **2.** A **newly acquired auto**.
  **3.** Any **trailer** you own.
  **4.** Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
   **a.** Breakdown;
   **b.** Repair;
   **c.** Servicing;
   **d.** Loss; or
   **e.** Destruction.
  This provision **(4.)** does not apply to Coverage For Damage To Your Auto.
  **B.** The definition of **Newly Acquired Auto** is added as follows:
  **"Newly Acquired Auto":**
  **1.** **Newly acquired auto** means any of the following types of vehicles you become the owner of during the policy period:
   **a.** A private passenger auto; or
   **b.** A pickup or van, for which no other insurance policy provides coverage, that:
    **(1)** Has a Gross Vehicle Weight of less than 10,000 lbs.; and
    **(2)** Is not used for the delivery or transportation of goods and materials unless such use is:
     **(a)** Incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or
     **(b)** For farming or ranching.
   For this definition to apply to a **newly acquired auto**, which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

  **2.** Coverage for a **newly acquired auto** is provided as described below. If you ask us to insure a **newly acquired auto** after a specified time period described below has elapsed, any coverage we provide for a **newly acquired auto** will begin at the time you request the coverage.

  **a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a **newly acquired auto** will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.
  However, for this coverage to apply to a **newly acquired auto** that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.
  If a **newly acquired auto** replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.
  **b.** Collision Coverage for a **newly acquired auto** begins On the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:
   **(1)** 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.
   **(2)** Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, a Collision deductible of $500 will apply.
  **c.** Other Than Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:
   **(1)** 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage

**Liberty Mutual.**
INSURANCE

AS 2258 08 06

we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto,** an Other Than Collision deductible of $500 will apply.

C. **"necessary medical"** - when applied to services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means services or supplies provided by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are:

1. Required to identify or treat an injury caused by an accident covered by this policy;
2. Consistent with symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;
3. Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;
4. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;
5. Not primarily for the convenience of the covered person, or his or her physician, hospital, or other health care provider;
6. The most appropriate supply or level of service that can be safely provided to the covered person; and
7. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment;

However, necessary medical services do not include expenses for any of the following:

1. Nutritional supplements or over-the-counter drugs;
2. Experimental services or a supply, which means services or supplies that we determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the

condition for which its use is proposed.

3. In patient services or supplies provided to the covered person when these could safely have been provided to the covered person as an outpatient.

D. **"reasonable expenses"** - when applied to medical services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means the least of:

1. The actual charge;
2. The charge negotiated with a provider; or
3. The charge determined by us based on a methodology using a database designed to reflect amounts charged by providers of medical services or supplies within the same or similar geographic region in which you receive your medical services or supplies. The database will reflect (a) service charge data regardless of the provider's specialty and (b) in the case of new procedures, services or supplies, or existing procedures, services or supplies for which there is little or no charge data, a comparison to commonly used procedures, services or supplies.

II. **PART A - LIABILITY COVERAGE**
Exclusion **4.** is under paragraph **B.** of the Exclusions section of **Part A** is replaced by the following:

4. Any vehicle, while being used for:
   a. competing in; or
   b. practicing or preparing for
   any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

III. **PART B - MEDICAL PAYMENTS COVERAGE**
Exclusion **11.** is under the Exclusions section of **Part B** is replaced by the following:

11. Sustained while **occupying** any vehicle while being used for:
    a. competing in; or
    b. practicing or preparing for
    any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

IV. **PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**
A. Paragraph **A.** of the **Insuring Agreement** of **Part D** is replaced by the following:
**INSURING AGREEMENT**
A. We will pay for direct and accidental loss to **your covered auto** or any



**Liberty Mutual.**
INSURANCE

AS 2258 08 06

**non-owned auto,** including their equipment, subject to **Customized Equipment Coverage,** minus any applicable deductible shown in the Declarations. If loss to more than one **your covered auto** or **non-owned auto** results from the same collision, only the highest applicable deductible will apply. We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto** we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

B. The following **Customized Equipment Coverage** provision is added under **Part D:**

**CUSTOMIZED EQUIPMENT COVERAGE**

A. We will pay up to $500 for theft or damage to **customized equipment** if the loss is caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a **non-owned auto** keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for **your covered auto** or any **non-owned auto.**

B. "**Customized equipment**" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

1. are permanently installed or attached by bolts or brackets;
2. are removable from a housing unit that is permanently installed inside the auto;
3. are permanently bonded to the vehicle by an adhesive or welding procedure; or
4. change the appearance or

performance of the vehicle including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered **customized equipment.**

This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered **customized equipment.**

C. If you have purchased additional coverage for **customized equipment** we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

D. The most we will pay for parts, equipment and accessories that are:

a. not installed by the auto manufacturer or dealer and
b. permanently installed in or upon the auto

is the actual cash value of the vehicle not including such parts, equipment and accessories.

C. The **Transportation Expenses** provision of **Part D** is replaced by the following:

**TRANSPORTATION EXPENSES**

In addition, we will pay up to $15 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies in the event of a loss to your covered auto if the loss is caused by:


**Liberty Mutual.**
INSURANCE

AS 2258 08 06

**a.** Other than collision only if the Declarations indicate Other Than Collision Coverage is provided for that auto.

**b.** Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

If the loss is caused by a total theft of **your covered auto**, we will pay only transportation expenses incurred during the period:

**1.** Beginning 48 hours after the theft; and

**2.** Ending when **your covered auto** is returned to use or we pay for its loss.

**D.** Exclusion **4.** is replaced by the following:

**4.** We will not pay for loss to equipment that is not permanently installed in or upon **your covered auto** or any **non-owned auto**. This consists of any equipment that is either designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

**a.** radios and stereos;

**b.** tape decks;

**c.** compact disc players and burners;

**d.** digital video disc (DVD) players and burners;

**e.** citizens band radios;

**f.** scanning monitor receivers;

**g.** television monitor receivers;

**h.** global positioning system (GPS) receivers and/or components;

**i.** video cassette players and recorders;

**j.** audio cassette recorders; or

**k.** personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

**E.** Exclusion **13.** is replaced by the following:

**13.** Loss to **your covered auto** or any **non-owned auto** while the car is being used for:

**a.** competing in; or

**b.** practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

**F.** Exclusion **15.** is added as follows:

**15.** We will not pay for loss to **customized equipment** in excess of

what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

**G.** Exclusion **16.** is added as follows:

**16.** We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

**H.** Paragraph **B** of the **Limit of Liability** provision of **Part D** is added as follows:

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any **customized equipment**.

**V.** **PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

**Part E** is amended as follows:

**A.** Paragraph **B.** of **Part E** is replaced by the following:

**B.** A person seeking any coverage must:

**1.** Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.

**2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

**3.** Submit, as often as we reasonably require, within 30 days of our request:

**a.** To physical and mental exams by physicians we select under terms we require. We will pay for these exams.

**b.** To interviews and recorded statements without the need for us to conduct an examination under oath.

**c.** To examination under oath and subscribe the same.

**4.** Authorize us to obtain, within 30 days of our request:

**a.** Medical reports; and

**b.** Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.



AS 2258 08 06

5. Submit a proof of loss when required by us within 30 days of our request.

## VI. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. The **Fraud** provision is replaced by the following:

**FRAUD**

This policy will not provide coverage under any part of this policy for any insured or any other person or entity seeking benefits under this policy (whether before or after a loss) who:

a. conceals or misrepresents any material fact or circumstance,

b. makes false statements or

c. engages in fraudulent conduct,

any of which relate to a loss, an accident, this insurance or the application for this policy.

Includes some copyrighted material of Insurance Services Office, Inc., with its permission.



## AMENDMENT OF POLICY DEFINITIONS

**THIS ENDORSEMENT CHANGES YOUR POLICY.  IT REPLACES ALL OTHER REFERENCES TO THE SAME SECTIONS OF THE POLICY.**

The following is added to item **A.** under the policy **DEFINITIONS:**

3. the partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

The above, only applies if the civil union or partnership was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

1. The end of 90 days following the change of residency;

2. The effective date of another policy listing the spouse or partner defined above as a named insured; or

3. The end of the policy period.

Paragraph **A.** of the **TRANSFER OF YOUR INTEREST IN THIS POLICY** is deleted. It is replaced with the following:

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

1. the surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death.  Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the declarations; and

2. the legal representative of the deceased person as if a named insured shown in the Declarations.  This applies only with regard to the representative's legal responsibility to maintain or use "your covered auto".

Section 1. only applies if the union or partnership is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

All other terms and conditions of this policy remain the same.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS COVERAGE - NEW MEXICO

PERSONAL AUTO
AS 3616 05 08

**I. PART C - UNINSURED MOTORISTS COVERAGE**

Part **C** is replaced by the following:

**INSURING AGREEMENT**

**A.** We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an:

1. "Uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury":

   **a.** Sustained by an "insured"; and

   **b.** Caused by an accident; and

2. "Uninsured motor vehicle" because of "property damage" caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle". With respect to damages an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle", we will pay under this coverage only if **1.** or **2.** below applies:

1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

   **a.** Have been given prompt written notice of such tentative settlement; and

   **b.** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Property damage" as used in this endorsement means injury to or destruction of the property of an "insured".

**D.** "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the "insured" for Uninsured Motorists Coverage under this policy or any other policy.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".  However, this exception **(1.)** does not apply for damages sustained by you or any "family member" if the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage under this policy or any other policy.

2. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   **a.** Denies coverage; or

   **b.** Is or becomes insolvent.

3. Owned or operated by a self-insurer under any applicable motor vehicle law.

Copyright, Insurance Services Office, Inc., 1994



E. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no liability bond or policy applies at the time of the accident.

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" or "property damage" without hitting:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

3. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent; or

2. Owned by or furnished or available for the regular use of you or any "family member". However, this exception (2.) does not apply for damages sustained by you or any "family member" if liability coverage is excluded for such damages under this policy or any other policy.

In addition, neither "uninsured motor vehicle" nor "underinsured motor vehicle" includes any vehicle or equipment:

1. Operated on rails or crawler treads.

2. Designed mainly for use off public roads while not on public roads.

3. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "property damage" or "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" or "property damage" claim without our consent.

2. When "your covered auto" is being used to carry persons or property for a fee. This exclusion (A.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

4. For the first $250 of the amount of "property damage" to the property of each "insured" as the result of any one accident.

5. While traveling as a passenger in any motor vehicle operated by a named excluded driver.

B. This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:

   a. Workers' compensation law; or

   b. Disability benefits law.

2. Any insurer of property.

## LIMIT OF LIABILITY

A. If "bodily injury" or "property damage" is sustained in an accident by you or any "family member", our maximum limit of liability for all damages in any such accident is the sum of the limits of liability for Uninsured Motorists Coverage shown in the Declarations applicable to each vehicle. Subject to this maximum limit of liability for all damages:

1. The most we will pay for "bodily injury" or "property damage" sustained in such accident by an "insured" other than you or any "family member" is that "insured's" pro rata share of the limit shown in the Declarations applicable to the vehicle that "insured" was "occupying" at the time of the accident;

2. You or any "family member" who sustains "bodily injury" or "property damage" in such accident will also be entitled to a pro rata share of the limit described in paragraph 1. above.

A person's pro rata share shall be the proportion that that person's damages bears to the total damages sustained by all "insureds".

The maximum limit of liability is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

Copyright, Insurance Services Office, Inc., 1994
AS 3616 05 08



3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. If "bodily injury" or "property damage" is sustained by any "insured" other than you or any "family member" in an accident in which neither you nor any "family member" sustained "bodily injury" or "property damage" the limit of liability shown in the Declarations applicable to the "your covered auto" the "insured" was "occupying" at the time of the accident is our maximum limit of liability for all damages resulting from any such accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

C. With respect to damages caused by an accident with an "underinsured motor vehicle", the limit of liability shall be reduced by all sums paid because of "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part **A** of the policy.

D. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or Part **B** of this policy.

E. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

F. No payment will be made for loss paid or payable to the "insured" under Part **D** of the policy.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

With respect to "property damage", this insurance shall apply only after the limits of any other collectible insurance applicable to the damaged property have been exhausted.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally;

unless the arbitration costs are awarded to the prevailing party by the arbitrators.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages.

## ADDITIONAL DUTY

A person seeking Uninsured Motorists Coverage under the definition of "underinsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

Copyright, Insurance Services Office, Inc., 1994



## II. PART F - GENERAL PROVISIONS

Part F is amended as follows:

**A.** The following is added to the Our Right To Recover Payment provision:

**OUR RIGHT TO RECOVER PAYMENT**

Our rights do not apply under Paragraph **A.** with respect to coverage under the definition of "underinsured motor vehicle" for Uninsured Motorists Coverage if we:

**1.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle" and

**2.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**1.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

**2.** We also have a right to recover the advanced payment.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1994
AS 3616 05 08



**SPLIT LIABILITY LIMITS**                                      PP 03 09 04 86

SCHEDULE

| | | |
|---|---|---|
| **Bodily Injury Liability** | $ _____ | each person |
| | $ _____ | each accident |
| **Property Damage Liability** | $ _____ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

            Copyright, Insurance Services Office, Inc., 1985



**Liberty Mutual.**
INSURANCE

**SPLIT UNINSURED MOTORISTS LIMITS - NEW MEXICO**

PERSONAL AUTO
PP 04 33 12 89

### SCHEDULE

| Uninsured Motorists Coverage | Limit of Liability | Premium | | |
|---|---|---|---|---|
| | | Auto 1 | Auto 2 | Auto 3 |
| Bodily Injury Liability | $ _____ each person | | | |
| | $ _____ each accident | | | |
| Property Damage Liability | $ _____ each accident | $ _____ | $ _____ | $ _____ |

Paragraph A. or B. of the Limit of Liability provision for Uninsured Motorists Coverage is replaced by A. or B. as follows:

**LIMIT OF LIABILITY**

**A.** If "bodily injury" or "property damage" is sustained in an accident by you or any "family member:"

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability Uninsured Motorists Coverage;

2. Subject to the maximum limit for each person described in 1. above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Uninsured Motorists Coverage.

3. Our maximum limit of liability for all "property damage" resulting from any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability Uninsured Motorists Coverage.

4. Subject to the maximum limits of liability set forth in 1., 2. or 3. above:

   a. the most we will pay for "bodily injury" or "property damage" sustained in such accident by an "insured" other than you or

   any "family member" is that "insured's" pro-rata share of the each person or each accident limit of liability shown in the Schedule or in the Declarations applicable to the vehicle that "insured" was "occupying" at the time of the accident, and

   b. you or any "family member" who sustains "bodily injury" or "property damage" in such accident will also be entitled to a pro-rata share of the each person or each accident limit described in paragraph 4.a. above.

   A person's pro-rata share shall be the proportion that that person's damages bears to the total damages sustained by all "insureds."

   The maximum limit of liability is the most we will pay regardless of the number of:

   1. "Insureds;"

   2. Claims made;

   3. Vehicles or premiums shown in the Schedule or in the Declarations; or

   4. Vehicles involved in the accident.

**B.** If "bodily injury" or "property damage" is sustained by an "insured" other than you or any "family member" in an accident in which neither you nor any "family member" sustained "bodily injury" or "property damage:"

 Copyright, Insurance Services Office, Inc., 1989



1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in such accident will be the each person limit of liability shown in the Schedule or in the Declarations for Bodily Injury Liability Uninsured Motorists Coverage applicable to the "your covered auto" that "insured" was "occupying" at the time of that accident.

2. Subject to this limit for each person, our maximum limit of liability for all damages arising out of "bodily injury" sustained in such accident is the each accident limit of liability shown in the Schedule or in the Declarations for Bodily Injury Liability Uninsured Motorists Coverage applicable to the "your covered auto" that "insured" was "occupying" at the time of the accident.

3. Our maximum limit of liability for all "property damage" resulting from such accident is the each accident limit of liability shown in the Schedule or in the Declarations for Property Damage Liability Uninsured Motorists Coverage applicable to the "your covered auto" that "insured" was "occupying" at the time of the accident.

The maximum limit of liability is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

   Copyright, Insurance Services Office, Inc., 1989   PP 04 33 12 89



**Liberty Mutual.**

---

## MEXICO EXTENSION ENDORSEMENT                                    AS 1006 (Ed. 12-89)

---

The coverage applying to "your covered auto" under Parts A, B and D of this policy also applies to accidents and losses while the automobile is in the Republic of Mexico, but not more than 75 miles from the United States border.  This coverage is subject to these additional provisions:

1.  The insurance applies only if, at the time of accident or loss, the automobile has not been in the Republic of Mexico more than 10 consecutive days.

2.  We have no obligation to defend any suit and the Supplementary Payments provisions of Part A and the Transportation Expense provision of Part D do not apply.

3.  In addition to the applicable limit of liability, we will pay (a) expenses you incur for first aid to others at the time of an accident for bodily injury covered by this policy and (b) reasonable expenses, except loss of earnings, you incur at our request.

4.  No settlement of any claim or suit will obligate us under this endorsement without our written consent.

5.  Except for Medical Payments Coverage, this insurance shall be excess over any other collectible insurance available to you as an insured under a policy applying to the automobile or otherwise. The Medical Payments Coverage shall be excess over any other collectible automobile medical payments insurance.

6.  If a loss to "your covered auto" requires repair or replacement while the automobile is in Mexico, the most we will pay is the cost of the repair or replacement at the nearest point in the United States where it can be made.

**WARNING** - If you have an automobile accident in Mexico and don't have insurance written by an insurance company licensed in Mexico, you could spend many hours or days in jail.  You should arrange for coverage from a licensed Mexican company to avoid complications and some other penalties possible under the laws of Mexico, including impounding of your car.  (Liberty is not licensed to write insurance in Mexico.)

(See below for explanation)

**IMPORTANT**

This endorsement extends **LIMITED COVERAGE**.

Under Mexican law automobile insurance policies written by United States companies are not recognized or considered valid for accidents or losses occurring in Mexico.  United States insurance companies are not permitted, directly or through Mexican agents, to assist their policyholders, investigate, settle or defend claims or suits in Mexico.

Notwithstanding the above we have included limited Mexican coverage (limited to 75 miles of the U.S. border and 10 consecutive days in Mexico) in your automobile insurance policy.  This extension is made to Liberty policyholders because your U.S. coverage is broader than that extended by Mexican companies and it is possible, under certain conditions, to reimburse you for a loss on your return to the states.

If you are planning a motor trip into Mexico you should contact one of the many agents representing reliable Mexican insurance companies and purchase a short term "Special Automobile Policy for Tourists" to protect you during your stay in that country.  You will find these agents in practically every American city or town near the border.



**Liberty Mutual.**

**NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD**
**EXCLUSION ENDORSEMENT**                                      AS 2228 07 05

**THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY**
** INCLUDING ANY AND ALL ENDORSEMENTS**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

We **do not** provide coverage for loss, damage, injury, liability, cost or expense, due to or as a consequence of, whether controlled or uncontrolled or however caused:

   a. Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or contamination; and/or

   b. Biological or chemical attack or exposure to biological or chemical agents, or combination of such agents, including resulting contamination or pollution.

We **do not** provide coverage for loss, damage, injury, liability, cost or expense arising out of or aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

© 2005 Liberty Mutual Insurance Group



## AUTOMATIC TERMINATION ENDORSEMENT

AS 1046  (Ed. 12-89)

The AUTOMATIC TERMINATION Provision in Part F of the policy is replaced with the following:

AUTOMATIC TERMINATION.  If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.



**Liberty Mutual.**
INSURANCE

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

PERSONAL AUTO
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I.  Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II.  Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 13 01 12 99                    Copyright, Insurance Services Office, Inc.,  1999                    Page 1 of 1



**NOTICE TO OTHERS IF CANCELLATION OCCURS**                    AS 1019 (Ed. 12-89)

**We** will not cancel **Your** Policy or reduce the insurance under any of its coverages until at least
_____10_____ days after we have mailed a written notice of such cancellation or reduction to the
person(s) named below.


**Name and Address\***

   \* As on file with the Company.

AS 1019 (Ed. 12-89)



## Notice of Membership in Liberty Mutual Holding Company Inc.

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations shall participate in the distribution of any dividends declared by us for this Policy. The amount of such Named Insured's participation is determined by the decision of our Board of Directors in compliance with any laws that apply.

Any provisions in the policy relating to:

1. Membership in Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company; or

2. Entitlement to dividends as a member of Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company

are deleted and replaced by the preceding paragraphs.

2340e



Liberty Mutual Insurance
350 E 96th Street
Indianapolis, IN 46240
Telephone: 317-581-6804

September 13, 2016

Zach Weichman
PO Box 7230
London, KY 40742

| | |
|---|---|
| Insured Name: | MITCHELL WOODALL |
| | VIVIAN WOODALL |
| Policy Number: | AO229825114810 |
| Claim Number: | 034189020 |
| Date of Loss: | 8/6/2016 |
| Effective Date: | 4/12/2016 |

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy
listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course
of its business.

Sincerely,

Luann Mueller
Policy Copy
Support

LM
Enclosures

**Attachment #2**

# Policy Declarations

## A summary of your auto insurance coverage



Thank you for renewing with us.

Your declarations are effective as of 04/12/2016.



### INSURANCE INFORMATION

| | |
|---|---|
| Named Insured: | Mitchell Woodall |
| | Vivian Woodall |
| Policy Number: | AO2-298-251148-10 6 2 |
| Policy Period: | 04/12/2016 -04/12/2017 12:01 AM standard time at the address of the Named Insured as stated below. |
| Mailing Address: | 22 Firelizard Ln |
| | Edgewood NM 87015 -8022 |



### ACTION REQUIRED:

Please review and keep for your records.



### QUESTIONS ABOUT YOUR POLICY?

By Phone

For Service:

1-800-225-7014

Liberty Mutual

PO Box 970

Mishawaka, IN 46546

To report a claim

By Phone

1-800-2CLAIMS

(1-800-225-2467)

THIS IS NOT YOUR AUTO INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.

## Vehicles Covered by Your Policy

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2007 | HARL | MOTORCYCLE | 1HD1PR83X7Y954543 |
| 2 | 2015 | HARL | MOTORCYCLE | 1HD1PXN13FB958247 |

## Coverage Details

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the indicated coverage for that vehicle.

## Coverage Information

| | |
|---|---|
| Total Annual Policy Premium | $1,128.00 |
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE VEH 1 | VEH 2 |
|---|---|---|---|---|
| A. Liability | | | $285 | $237 |
| Bodily Injury | $ 100,000 | Each Person | Yes | Yes |
| | $ 300,000 | Each Accident | | |
| Property Damage | $ 50,000 | Each Accident | | |
| C. Uninsured Motorists Has Been Rejected | | | | |
| D. Coverage for Damage to Your Auto | | | | |
| Collision | | | $189 | $213 |
| Actual Cash Value Less Deductible Shown | | | | |
| Veh 1 $1000 | Veh 2 $1000 | | | |
| Other Than Collision | | | $102 | $102 |
| Actual Cash Value Less Deductible Shown | | | | |
| Veh 1 $1000 | Veh 2 $1000 | | | |
| Annual Premium Per Vehicle: | | | $576 | $552 |



## Coverage Information (continued)

| Total Annual Policy Premium | $1,128.00 |
| --- | --- |
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |



Policy Number:
AO2-298-251148-10 6 2
Declarations effective:
04/12/2016

## Discounts and Benefits

Your discounts and benefits have been applied to your Total Annual Policy Premium.

POLICY DISCOUNTS

- Motorcycle Accident Prevention Course
- Multi-Motorcycle
- TruStage™ Auto and Homeowners Insurance Program
- Multi-Policy

## Additional Information for Vehicles Covered by Your Policy

COST NEW VALUE

VEH 1: $26,000
VEH 2: $35,000

CC

VEH 1: 1800 CC'S
VEH 2: 1450 CC'S

## Driver Information

| DRIVER NAME | LICENSE NUMBER | DATE OF BIRTH | STATE |
| --- | --- | --- | --- |
| Mitchell F Woodall | 107724257 | 03/03/1959 | NM |

To ensure proper coverage, please contact us to add drivers not listed above.

## Safe Driver Insurance Plan

No Charges Apply - SCO

## Endorsements - Changes to Your Policy

Amendment of Policy Provisions - New Mexico AS2162 06 07
Automobile Amendatory Endorsement AS2258 08 06
Amendment of Policy Definitions AS2344 04 08
Split Liability Limits PP 03 09 04 86
Mexico Extension Endorsement AS1006 12 89
New Vehicle Replacement Cost Coverage AS2112 10 99
Nuclear, Bio-Chemical & Mold Exclusion Endorsement AS2228 07 05
Automatic Termination Endorsement AS1046 12 89
Coverage For Damage To Your Auto Exclusion Endorsement PP 13 01 12 99
Miscellaneous Type Vehicle Endorsement PP 03 23 06 94
Membership in LMHC Inc. 2340 E



LibertyGuard Auto Policy Declarations provided and underwritten by
Liberty Mutual Fire Insurance Company, Boston, MA.

This policy, including endorsements listed above,
is countersigned by:

_____
Authorized Representative

Policy Number:
AO2-298-251148-10 6 2
Declarations effective:
04/12/2016

_____
President

_____
Secretary



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 300 offices throughout the United States. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**                    Liberty Mutual Insurance Group

AUTO 3422 Ed. 6-94 R1

**LIBERTYGUARD AUTO POLICY**

**QUICK REFERENCE**

**DECLARATIONS PAGE**

Your Name and Address
Your Auto or Trailer
Policy Period
Coverages and Amounts of Insurance

|  | Beginning On Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |

**PART A - LIABILITY COVERAGE**

| | |
|---|---|
| Insuring Agreement | 2 |
| Supplementary Payments | 2 |
| Exclusions | 2 |
| Limit of Liability | 3 |
| Out of State Coverage | 3 |
| Financial Responsibility | 4 |
| Other Insurance | 4 |

**PART B - MEDICAL PAYMENTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 4 |
| Exclusions | 4 |
| Limit of Liability | 4 |
| Other Insurance | 5 |

**PART C - UNINSURED MOTORISTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 5 |
| Exclusions | 5 |
| Limit of Liability | 6 |
| Other Insurance | 6 |
| Arbitration | 6 |

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

| | |
|---|---|
| Insuring Agreement | 7 |
| Transportation Expenses | 7 |
| Exclusions | 8 |
| Limit of Liability | 9 |
| Payment of Loss | 9 |
| No Benefit to Bailee | 9 |
| Other Sources of Recovery | 9 |
| Appraisal | 9 |

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS** . . . . . . . . . . . . . 10

**PART F - GENERAL PROVISIONS**

| | |
|---|---|
| Bankruptcy | 10 |
| Changes | 10 |
| Fraud | 10 |
| Legal Action Against Us | 10 |
| Our Right To Recover Payment | 11 |
| Policy Period And Territory | 11 |
| Termination | 11 |
| Transfer Of Your Interest In This Policy | 12 |
| Two Or More Auto Policies | 12 |

**\*MUTUAL POLICY CONDITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . 12

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



## AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

**B.** "We," "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means in, upon, getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

**J.** "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup or van that:

(1) has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2) is not used for the delivery or transportation of goods and materials unless such use is:

(a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

(b) for farming or ranching.

This provision (J.2.) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;      d. loss; or
b. repair;         e. destruction.
c. servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.



## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.   Damages include pre-judgment interest awarded against the "insured."   We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.   We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of

attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

**A.** We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that "insured."

3. For "property damage" to property:

   a. rented to;

   b. used by; or

   c. in the care of;

   that "insured."

   This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance.  This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. selling;          d. storing; or

   b. repairing;        e. parking;

   c. servicing;

   vehicles designed for use mainly on public highways.  This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. you;

   b. any "family member;" or

   c. any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in exclusion A.6.

   This exclusion (A.7.) does not apply to



the maintenance or use of a:

a. Private passenger auto;

b. Pickup or van that:

(1) You own; or

(2) You do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

a. breakdown;   d. loss; or
b. repair;   e. destruction; or
c. servicing;

c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

9. For "bodily injury" or "property damage" for which that "insured:"

a. is an insured under a nuclear energy liability policy; or

b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. American Nuclear Insurers;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

a. Has fewer than four wheels; or

b. Is designed mainly for use off public roads.

This exclusion (B.1.) does not apply:

a. While such vehicle is being used by an "insured" in a medical emergency; or

b. To any "trailer."

2. Any vehicle, other than "your covered auto," which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (B.3.) does not apply to you while you are maintaining or

"occupying" any vehicle which is:

a. owned by a "family member;" or

b. furnished or available for the regular use of a "family member."

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.



**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

**INSURING AGREEMENT**

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and

2. Sustained by an "insured."

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member:"

   a. while "occupying;" or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any "insured" for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by you; or

   b. furnished or available for your regular use.

6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by any "family member;" or

   b. furnished or available for the regular use of any "family member."

However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. discharge of a nuclear weapon (even if accidental);

   b. war (declared or undeclared);

   c. civil war;

   d. insurrection; or

   e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. nuclear reaction;

   b. radiation; or

   c. radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

   a. competing in; or

   b. practicing or preparing for;

   any prearranged or organized racing or speed contest.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"



2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured;" and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

a. you or any "family member;"

b. a vehicle which you or any "family member" are "occupying;" or

c. "your covered auto."

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. denies coverage; or

b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

### EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying," or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured:"

1. If that "insured" or the legal



representative settles the "bodily injury" claim without our consent.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

3. If the coverage under this policy is provided:

a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured;"

from the owner or operator of an "uninsured motor vehicle," then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the



minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision," only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provide d for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail. Water or flood;
7. Malicious mischief or vandalism
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

**C.** "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

### TRANSPORTATION EXPENSES

In addition, we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Temporary transportation expenses incurred by you in the event of a loss to "your covered auto." We will pay for such expenses if the loss is caused by:
   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto." We will pay for loss of use expenses if the loss is caused by:
   a. Other than "collision" only if the Delcarations indicate that Other Than Collision Coverage is provided for any "your covered auto."
   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto."

If the loss is caused by a total theft of "your covered auto" or a "non-owned auto," we will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

If the loss is caused by other than theft of a "your covered auto" or a "non-owned auto," we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto."



**EXCLUSIONS**

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. discharge of any nuclear weapon (even if accidental);

   c. war (declared or undeclared);

   d. civil war;

   e. insurrection; or

   f. rebellion or revolution.

4. Loss to:

   a. Any electronic equipment designed for the reproduction of sound, including, but not limited to:

      (1) radios and stereos;

      (2) tape decks; or

      (3) compact disc players;

   b. Any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

      (1) citizens band radios;

      (2) telephones;

      (3) two-way mobile radios;

      (4) scanning monitor receivers;

      (5) television monitor receivers;

      (6) video cassette recorders;

      (7) audio cassette recorders; or

      (8) personal computers;

   c. tapes, records, discs, or other media used with equipment described in a. or b.; or

   d. any other accessories used with equipment described in a. or b.

   This exclusion (4.) does not apply to:

   a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

      (1) The equipment is permanently installed in "your covered auto" or any "non-owned auto;" or

      (2) The equipment is:

         (a) Removable from a housing unit which is permanently installed in the auto;

         (b) Designed to be solely operated by use of the power from the auto's electrical system; and

         (c) In or upon "your covered auto" or any "non-owned auto;"

      at the time of the loss.

   b. any other electronic equipment that is:

      (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

      (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

5. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

   a. acquire during the policy period; and

   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

   a. awnings or cabanas; or

   b. equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or location of radar or laser.



10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   a. special carpeting and insulation, furniture or bars;

   b. facilities for cooking and sleeping;

   c. height-extending roofs; or

   d. custom murals, paintings or other decals or graphics.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. selling;       d. storing; or

   b. repairing;     e. parking;

   c. servicing;

   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

13. Loss to "your covered auto" or any "non-owned auto," located inside a facility designed for racing, for the purpose of:

   a. competing in; or

   b. practicing or preparing for;

   any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

   a. you; or

   b. any "family member;"

   if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member," pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a trailer is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto;"

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:



1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

**B.** We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:
   a. to physical exams by physicians we select. We will pay for these exams.
   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:
   a. medical reports; and

b. other pertinent records.

5. Submit a proof of loss when required by us.

**C.** A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium

adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all



the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

**A. Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. at least 10 days notice:

      (1) if cancellation is for nonpayment of premium; or

      (2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. at least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. for nonpayment of premium; or

   b. if your driver's license or that of:

      (1) any driver who lives with you; or

      (2) any driver who customarily uses "your covered auto;"

   has been suspended or revoked. This must have occurred:

      (1) during the policy period; or

      (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. if the policy was obtained through material misrepresentation.

**B. Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**C. Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by



this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto."

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**PRESIDENT**

**SECRETARY**

Includes Copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**AMENDMENT OF POLICY PROVISIONS - NEW MEXICO**

AS 2162 06 07
(PP 01 96 06 94)

**I.  Part A - Liability Coverage**

  **A.**  Paragraph **A.** of the **Insuring Agreement** is replaced by the following:

  **A.** We will pay damages, other than punitive or exemplary damages, for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.    Damages    include prejudgment interest awarded against the "insured".    We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.    We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

  **B.**  Exclusion **A.3.** is replaced by the following:

  We do not provide Liability Coverage for any "insured":

  **3.**  For "property damage" to property:

  **a.**  Rented to;
  **b.**  Used by; or
  **c.**  In the care of;

  that "insured":

  This Exclusion **(A.3.)** does not apply to "property damage" to a:

  **a.**  Residence or private garage; or
  **b.**  Vehicle you do not own if:

  **(1)**  A licensed automobile dealer provides the vehicle without charge to you or a "family member":

  **(a)**  For use as a temporary substitute    while    "your covered auto"  is out of normal use because of its breakdown,    repair    or servicing;

  **(b)**  To    demonstrate    the vehicle; or

  **(c)**  As    a    promotional    or courtesy vehicle; or

  **(2)**  A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or without charge, to you or a

"family member":

  **(a)**  For use as a temporary substitute    while    "your covered auto"  is out of normal use because of its breakdown,    repair    or servicing;

  **(b)**  To    demonstrate    the vehicle; or

  **(c)**  As    a    promotional    or courtesy vehicle; and

  The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:

  **PRIMARY LIABILITY ASSIGN-MENT**

  In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

  **C.**  The **Other Insurance** Provision is replaced by the following:

  **OTHER INSURANCE**

  If there is other applicable liability insurance, we will pay only our share of the loss.  Our share is the proportion that our limit of liability bears to the total of all applicable limits.  Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

  However,    we    will    provide    primary insurance for a vehicle you do not own if:

  **1.**  A licensed automobile dealer provides the vehicle without charge to you or a "family member":

  **a.**  For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

  **b.**  To demonstrate the vehicle; or

  **c.**  As a promotional or courtesy vehicle; or

  **2.**  A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or



without charge, to you or a "family member":

**a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

**b.** To demonstrate the vehicle; or

**c.** As a promotional or courtesy vehicle; and

The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:

> **PRIMARY LIABILITY ASSIGN-MENT**
>
> In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

**II. Part D - Coverage For Damage To Your Auto**

Paragraph **C.** of the **Insuring Agreement** is replaced by the following:

"Non-owned auto" means:

**1.** Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

**2.** Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

However, "non-owned auto" does not include any vehicle you do not own if:

**1.** A licensed automobile dealer provides the vehicle without charge to you or a "family member":

**a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

**b.** To demonstrate the vehicle; or

**c.** As a promotional or courtesy vehicle; or

**2.** A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or without charge, to you or a "family member":

**a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

**b.** To demonstrate the vehicle; or

**c.** As a promotional or courtesy vehicle; and

The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:

> **PRIMARY LIABILITY ASSIGNMENT**
>
> In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

**III. PART F - GENERAL PROVISIONS**

Part F is amended as follows:

**A.** The Termination provision is amended as follows:

**TERMINATION**

The Nonrenewal section is replaced by the following:

**Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy.  Notice will be mailed at least 30 days before the end of the policy period.  If the policy period is less than 6 months, we will have the right not to renew or continue every 6 months, beginning 6 months from its original effective date.

**B.** The following is added to the Two Or More Auto Policies provision:

**TWO OR MORE AUTO POLICIES**

**1.** This provision does not apply to Uninsured Motorists Coverage.

**2.** No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1993


**Liberty
Mutual.**
INSURANCE

**AUTOMOBILE AMENDATORY ENDORSEMENT**                                                                                            AS 2258 08 06

**I.  DEFINITIONS**

The **Definitions** section is revised as follows:

**A.** The definition of **Your Covered Auto** is replaced with the following:

"**Your Covered Auto**" means:

1. Any vehicle shown in the Declarations.

2. A **newly acquired auto**.

3. Any **trailer** you own.

4. Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   **a.** Breakdown;

   **b.** Repair;

   **c.** Servicing;

   **d.** Loss; or

   **e.** Destruction.

This provision (**4.**) does not apply to Coverage For Damage To Your Auto.

**B.** The definition of **Newly Acquired Auto** is added as follows:

"**Newly Acquired Auto**":

1. **Newly acquired auto** means any of the following types of vehicles you become the owner of during the policy period:

   **a.** A private passenger auto; or

   **b.** A pickup or van, for which no other insurance policy provides coverage, that:

   (1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

   (2) Is not used for the delivery or transportation of goods and materials unless such use is:

   (a) Incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

   (b) For farming or ranching.

   For this definition to apply to a **newly acquired auto**, which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

2. Coverage for a **newly acquired auto** is provided as described below. If you ask us to insure a **newly acquired auto** after a specified time period described below has elapsed, any coverage we provide for a **newly acquired auto** will begin at the time you request the coverage.

**a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a **newly acquired auto** will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

However, for this coverage to apply to a **newly acquired auto** that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

If a **newly acquired auto** replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

**b.** Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, a Collision deductible of $500 will apply.

**c.** Other Than Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage


Liberty Mutual.
INSURANCE

AS 2258 08 06

we now provide for any auto shown in the Declarations.
   (2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, an Other Than Collision deductible of $500 will apply.

C. **"necessary medical"** - when applied to services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means services or supplies provided by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are:

1. Required to identify or treat an injury caused by an accident covered by this policy;
2. Consistent with symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;
3. Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;
4. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;
5. Not primarily for the convenience of the covered person, or his or her physician, hospital, or other health care provider;
6. The most appropriate supply or level of service that can be safely provided to the covered person; and
7. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment;

However, necessary medical services do not include expenses for any of the following:

1. Nutritional supplements or over-the-counter drugs;
2. Experimental services or a supply, which means services or supplies that we determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the

condition for which its use is proposed.

3. In patient services or supplies provided to the covered person when these could safely have been provided to the covered person as an outpatient.

D. **"reasonable expenses"** - when applied to medical services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means the least of:

1. The actual charge;
2. The charge negotiated with a provider; or
3. The charge determined by us based on a methodology using a database designed to reflect amounts charged by providers of medical services or supplies within the same or similar geographic region in which you receive your medical services or supplies. The database will reflect (a) service charge data regardless of the provider's specialty and (b) in the case of new procedures, services or supplies, or existing procedures, services or supplies for which there is little or no charge data, a comparison to commonly used procedures, services or supplies.

II. **PART A - LIABILITY COVERAGE**
Exclusion **4.** is under paragraph **B.** of the Exclusions section of **Part A** is replaced by the following:

4. Any vehicle, while being used for:
   a. competing in; or
   b. practicing or preparing for
   any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

III. **PART B - MEDICAL PAYMENTS COVERAGE**
Exclusion **11.** is under the Exclusions section of **Part B** is replaced by the following:

11. Sustained while **occupying** any vehicle while being used for:
   a. competing in; or
   b. practicing or preparing for
   any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

IV. **PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**
A. Paragraph **A.** of the **Insuring Agreement** of **Part D** is replaced by the following:
   **INSURING AGREEMENT**
   A. We will pay for direct and accidental loss to **your covered auto** or any



AS 2258 08 06

**non-owned auto**, including their equipment, subject to **Customized Equipment Coverage**, minus any applicable deductible shown in the Declarations. If loss to more than one **your covered auto** or **non-owned auto** results from the same collision, only the highest applicable deductible will apply. We will pay for loss to **your covered auto** caused by:

  1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
  2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

  If there is a loss to a **non-owned auto** we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

B. The following **Customized Equipment Coverage** provision is added under **Part D**:

**CUSTOMIZED EQUIPMENT COVERAGE**

  A. We will pay up to $500 for theft or damage to **customized equipment** if the loss is caused by:
  1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
  2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

  Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a **non-owned auto** keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for **your covered auto** or any **non-owned auto**.

  B. "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:
  1. are permanently installed or attached by bolts or brackets;
  2. are removable from a housing unit that is permanently installed inside the auto;
  3. are permanently bonded to the vehicle by an adhesive or welding procedure; or
  4. change the appearance or

performance of the vehicle including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered **customized equipment**.

This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered **customized equipment**.

  C. If **you** have purchased additional coverage for **customized equipment** we will pay up to the amount of coverage **you** have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

  D. The most we will pay for parts, equipment and accessories that are:
  a. not installed by the auto manufacturer or dealer and
  b. permanently installed in or upon the auto

  is the actual cash value of the vehicle not including such parts, equipment and accessories.

C. The **Transportation Expenses** provision of **Part D** is replaced by the following:

**TRANSPORTATION EXPENSES**

In addition, we will pay up to $15 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies in the event of a loss to **your covered auto** if the loss is caused by:



a. Other than collision only if the Declarations indicate Other Than Collision Coverage is provided for that auto.

b. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

If the loss is caused by a total theft of your covered auto, we will pay only transportation expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when your covered auto is returned to use or we pay for its loss.

**D.** Exclusion **4.** is replaced by the following:

4. We will not pay for loss to equipment that is not permanently installed in or upon **your covered auto** or any **non-owned auto**. This consists of any equipment that is either designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

a. radios and stereos;

b. tape decks;

c. compact disc players and burners;

d. digital video disc (DVD) players and burners;

e. citizens band radios;

f. scanning monitor receivers;

g. television monitor receivers;

h. global positioning system (GPS) receivers and/or components;

i. video cassette players and recorders;

j. audio cassette recorders; or

k. personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

**E.** Exclusion **13.** is replaced by the following:

13. Loss to **your covered auto** or any **non-owned auto** while the car is being used for:

a. competing in; or

b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

**F.** Exclusion **15.** is added as follows:

15. We will not pay for loss to **customized equipment** in excess of

what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

**G.** Exclusion **16.** is added as follows:

16. We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

**H.** Paragraph B of the **Limit of Liability** provision of **Part D** is added as follows:

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any **customized equipment**.

**V. PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

Part E is amended as follows:

**A.** Paragraph **B.** of Part E is replaced by the following:

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require, within 30 days of our request:

a. To physical and mental exams by physicians we select under terms we require. We will pay for these exams.

b. To interviews and recorded statements without the need for us to conduct an examination under oath.

c. To examination under oath and subscribe the same.

4. Authorize us to obtain, within 30 days of our request:

a. Medical reports; and

b. Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.



AS 2258 08 06

5. Submit a proof of loss when required by us within 30 days of our request.

## VI. PART F - GENERAL PROVISIONS

**Part F** is amended as follows:

**A.** The **Fraud** provision is replaced by the following:

**FRAUD**

This policy will not provide coverage under any part of this policy for any insured or any other person or entity seeking benefits under this policy (whether before or after a loss) who:

a. conceals or misrepresents any material fact or circumstance,
b. makes false statements or
c. engages in fraudulent conduct,

any of which relate to a loss, an accident, this insurance or the application for this policy.

Includes some copyrighted material of Insurance Services Office, Inc., with its permission.



# AMENDMENT OF POLICY DEFINITIONS

**THIS ENDORSEMENT CHANGES YOUR POLICY. IT REPLACES ALL OTHER REFERENCES TO THE SAME SECTIONS OF THE POLICY.**

The following is added to item **A.** under the policy **DEFINITIONS:**

> 3. the partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

> The above, only applies if the civil union or partnership was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

> If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

> > **1.** The end of 90 days following the change of residency;

> > **2.** The effective date of another policy listing the spouse or partner defined above as a named insured; or

> > **3.** The end of the policy period.

Paragraph **A.** of the **TRANSFER OF YOUR INTEREST IN THIS POLICY** is deleted. It is replaced with the following:

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

> **1.** the surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death. Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the declarations; and

> **2.** the legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with regard to the representative's legal responsibility to maintain or use "your covered auto".

Section 1. only applies if the union or partnership is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

All other terms and conditions of this policy remain the same.



**SPLIT LIABILITY LIMITS** PP 03 09 04 86

### SCHEDULE

| | | |
|---|---|---|
| **Bodily Injury Liability** | $_____ | each person |
| | $_____ | each accident |
| **Property Damage Liability** | $_____ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1985


**Liberty Mutual.**

**MEXICO EXTENSION ENDORSEMENT**                                      AS 1006 (Ed. 12-89)

The coverage applying to "your covered auto" under Parts A, B and D of this policy also applies to accidents and losses while the automobile is in the Republic of Mexico, but not more than 75 miles from the United States border.  This coverage is subject to these additional provisions:

1.  The insurance applies only if, at the time of accident or loss, the automobile has not been in the Republic of Mexico more than 10 consecutive days.

2.  We have no obligation to defend any suit and the Supplementary Payments provisions of Part A and the Transportation Expense provision of Part D do not apply.

3.  In addition to the applicable limit of liability, we will pay (a) expenses you incur for first aid to others at the time of an accident for bodily injury covered by this policy and (b) reasonable expenses, except loss of earnings, you incur at our request.

4.  No settlement of any claim or suit will obligate us under this endorsement without our written consent.

5.  Except for Medical Payments Coverage, this insurance shall be excess over any other collectible insurance available to you as an insured under a policy applying to the automobile or otherwise.  The Medical Payments Coverage shall be excess over any other collectible automobile medical payments insurance.

6.  If a loss to "your covered auto" requires repair or replacement while the automobile is in Mexico, the most we will pay is the cost of the repair or replacement at the nearest point in the United States where it can be made.

**WARNING** - If you have an automobile accident in Mexico and don't have insurance written by an insurance company licensed in Mexico, you could spend many hours or days in jail.  You should arrange for coverage from a licensed Mexican company to avoid complications and some other penalties possible under the laws of Mexico, including impounding of your car.  (Liberty is not licensed to write insurance in Mexico.)

(See below for explanation)

**IMPORTANT**

This endorsement extends **LIMITED COVERAGE.**

Under Mexican law automobile insurance policies written by United States companies are not recognized or considered valid for accidents or losses occurring in Mexico.  United States insurance companies are not permitted, directly or through Mexican agents, to assist their policyholders, investigate, settle or defend claims or suits in Mexico.

Notwithstanding the above we have included limited Mexican coverage (limited to 75 miles of the U.S. border and 10 consecutive days in Mexico) in your automobile insurance policy.  This extension is made to Liberty policyholders because your U.S. coverage is broader than that extended by Mexican companies and it is possible, under certain conditions, to reimburse you for a loss on your return to the states.

If you are planning a motor trip into Mexico you should contact one of the many agents representing reliable Mexican insurance companies and purchase a short term "Special Automobile Policy for Tourists" to protect you during your stay in that country.  You will find these agents in practically every American city or town near the border.

AS 1006 (Ed. 12-89)



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## NEW VEHICLE REPLACEMENT COST COVERAGE

PERSONAL AUTO
AS 2112 10 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

In the event of a covered total loss to a new *"your covered auto" shown in the Declarations for which a specific premium charge indicates that "Collision" Coverage and/or Other Than Collision Coverage applies, the "covered auto" will be replaced at the Actual Cash Value (less any applicable deductible) without adjustments for depreciation that is referenced in the Limit of Liability B. Section of **Part D** of the policy.

* A new vehicle as used in this endorsement is one that has not been previously titled under the motor vehicle laws of any state.

Replacement Cost for a total loss on a new "your covered auto" applies as follows:

a.  total loss must occur during the first 12 months of insurance  coverage, and

b.  within the vehicle's first 15,000 miles,

whichever occurs first, we will pay, at our option, the full cost of repair or replacement, less the applicable deductible.

This does not apply to a substitute automobile, a non-owned automobile or a vehicle leased under a long-term contract of 6 months or longer.

The following conditions apply:

1.  Our liability for any loss will not be more than the cost to replace the damaged property with:

    a.  a previously untitled vehicle of the year, make, model and equipment of the damaged automobile or, if unavailable

    b.  a vehicle that is most similar in class and body type to the year, make, model and equipment of the damaged automobile.

2.  We will not pay for any loss before the actual repair or replacement is completed.

3.  We have the right to pay the loss in money or to repair or replace the damaged  automobile.

For purposes of this endorsement, Total Loss means a loss in which the cost to replace or repair the vehicle to its pre-loss condition plus salvage value, equals or exceeds the actual cost value.



**NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD
EXCLUSION ENDORSEMENT**                                    AS 2228 07 05

**THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY
INCLUDING ANY AND ALL ENDORSEMENTS**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

We **do not** provide coverage for loss, damage, injury, liability, cost or expense, due to or as a
consequence of, whether controlled or uncontrolled or however caused:

    a. Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or
       contamination; and/or

    b. Biological or chemical attack or exposure to biological or chemical agents, or combination of
       such agents, including resulting contamination or pollution.

We **do not** provide coverage for loss, damage, injury, liability, cost or expense arising out of or
aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus or
bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or
byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

© 2005 Liberty Mutual Insurance Group


**Liberty Mutual.**

## AUTOMATIC TERMINATION ENDORSEMENT

**AS 1046** (Ed. 12-89)

The AUTOMATIC TERMINATION Provision in Part F of the policy is replaced with the following:

AUTOMATIC TERMINATION.  If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.



**Liberty Mutual.**
INSURANCE

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

PERSONAL AUTO
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 13 01 12 99                Copyright, Insurance Services Office, Inc.,  1999                Page 1 of 1

POLICY NUMBER:



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MISCELLANEOUS TYPE VEHICLE ENDORSEMENT

PERSONAL AUTO
PP 03 23 06 94

### SCHEDULE

| Description and Type of Vehicle | Passenger Hazard Excluded | |
|---|---|---|
| 1. | Yes ☐ | No ☐ |
| 2. | Yes ☐ | No ☐ |
| 3. | Yes ☐ | No ☐ |

Coverage is provided where a premium and a limit of liability is shown for the coverage.

| Coverages | Limit Of Liability | | Premium Veh. 1 | Veh. 2 | Veh. 3 |
|---|---|---|---|---|---|
| Liability | $ | Each Accident | $ | | |
| | $ | Each Accident | | $ | |
| | $ | Each Accident | | | $ |
| Medical Payments | $ | Each Person | $ | | |
| | $ | Each Person | | $ | |
| | $ | Each Person | | | $ |
| Uninsured Motorists | $ | Each Accident | $ | | |
| | $ | Each Accident | | $ | |
| | $ | Each Accident | | | $ |
| Collision | $ Less $ Ded. | | $ | | |
| | $ Less $ Ded. | | | $ | |
| | $ Less $ Ded. | | | | $ |
| Other Than Collision | $ Less $ Ded. | | $ | | |
| | $ Less $ Ded. | | | $ | |
| | $ Less $ Ded. | | | | $ |
| | Total Premium | | $ | | |

**NOTICE**
**For the Collision and Other Than Collision Coverages, the amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of loss or damage for the described property.  PLEASE refer to the Limit of Liability provision below.**

With respect to the "miscellaneous type vehicles" and coverages described in the Schedule or in the Declarations, the provisions of the policy apply unless modified by this endorsement.

### I. DEFINITIONS

The Definitions Section is amended as follows:

A. For the purpose of the coverage provided by this endorsement "miscellaneous type vehicle" means a motor home, motorcycle or other similar type vehicle, all-terrain vehicle, dune buggy or golf cart.

B. The definition of "your covered auto" is replaced by the following:

"Your covered auto" means:

1. Any "miscellaneous type vehicle" shown in the Schedule or in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto;

b. a pickup or van that:

(1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2) Is not used for the delivery or transportation of goods and materials unless such use is:

(a) Incidental to your "business" of maintaining or repairing furnishings or equipment; or



**Liberty Mutual.**
INSURANCE

(b)   For farming or ranching.

c. any "miscellaneous type vehicle" of the same type shown in the Schedule or in the Declarations.

This provision applies only if:

a. You acquire the vehicle during the policy period;

b. You ask us to insure it within 30 days after you become the owner; and

c. With respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one of the same type shown in the Schedule or in the Declarations, it will have the same coverage as the vehicle it replaced.  You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any of the same type shown in the Schedule or in the Declarations, it will have the broadest coverage we now provide for any vehicle of that type shown in the Schedule or in the Declarations.

3. Any "trailer".

4. Any "miscellaneous type vehicle" or auto you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

This provision (**4.**) does not apply to Coverage for Damage to Your Auto.

## II. PART A - LIABILITY COVERAGE

Part **A** is amended as follows:

**A.** The definition of "insured" is replaced by the following:

"Insured" means:

1. You or any "family member" for the ownership, maintenance or use of "your covered auto".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

**B.** The Exclusions Section is amended as follows:

1. Exclusion **B.1.** is replaced by the following:

We do not provide Liability Coverage for the ownership, maintenance or use of any vehicle which:

a. Has fewer than four wheels; or

b. Is designed mainly for use off public roads.

This exclusion (**B.1.**) does not apply:

a. While such vehicle is being used by an "insured" in a medical emergency; or

b. To any "trailer"; or

c. To a vehicle having fewer than four wheels if it is insured for Liability Coverage under this endorsement.

2. The following exclusion applies under Section **A** to any vehicle for which the Schedule or Declarations indicates that the passenger hazard is excluded:

We do not provide Liability Coverage for any "insured" for "bodily injury" to any "insured" while "occupying" the described "miscellaneous type vehicle".

## III. PART B - MEDICAL PAYMENTS COVERAGE

Exclusion **1.** of Part **B** is replaced by the following:

We do not provide Medical Payments Coverage for any "insured" for "bodily injury" sustained while "occupying" any motorized vehicle having fewer than four wheels.  However, this exclusion (**1.**) does not apply to a motorized vehicle having fewer than four wheels if it is insured for Medical Payments Coverage under this endorsement.

Copyright, Insurance Services Office, Inc., 1993



**IV. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

Part **D** is amended as follows:

**A.** The following is added to the definition of "non-owned auto":

  **3.** Any motor home, motorcycle or other similar type vehicle, all-terrain vehicle, dune buggy or golf cart you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

    **a.** Breakdown;    **d.** Loss; or
    **b.** Repair;       **e.** Destruction.
    **c.** Servicing;

**B.** With respect to the Coverage(s) shown as applicable to a vehicle described in the Schedule or in the Declarations, the Limit of Liability provision is replaced by the following:

**LIMIT OF LIABILITY**

**A.** Our limit of liability for loss will be the lesser of the:

  **1.** Amount shown in the Schedule or in the Declarations;

  **2.** Actual cash value of the stolen or damaged property; or

  **3.** Amount necessary to repair or replace the property with other property of like kind and quality.

Our payment for loss will be reduced by any applicable deductible shown in the Schedule or in the Declarations. If loss to more than one "your covered auto" results from the same "collision", only the highest applicable deductible will apply.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**C.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1993





## Notice of Membership in Liberty Mutual Holding Company Inc.

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations shall participate in the distribution of any dividends declared by us for this Policy. The amount of such Named Insured's participation is determined by the decision of our Board of Directors in compliance with any laws that apply.

Any provisions in the policy relating to:

1.  Membership in Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company; or

2.  Entitlement to dividends as a member of Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company

are deleted and replaced by the preceding paragraphs.

2340e

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/23/2017 1:21:06 PM
STEPHEN T. PACHECO
Gloria Landin

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

MITCHELL WOODALL,

   Plaintiff,

vs.          No. D-101-CV-2017-01727

LIBERTY MUTUAL GROUP, INC.,
d/b/a LIBERTY MUTUAL INSURANCE,

   Defendant.

## AMENDED COMPLAINT FOR UNINSURED/ UNDERINSURED MOTORIST BENEFITS

  COMES NOW the Plaintiff, Mitchell Woodall, by and through his attorneys of record, Will Ferguson & Associates (Robert C. Gutierrez) and for his Complaint for Uninsured/Underinsured Motorist Benefits against Defendant Liberty Mutual Group, Inc., states as follows:

### JURISDICTION AND VENUE

1. Plaintiff Mitchell Woodall is a resident of Edgewood, New Mexico, Santa Fe County and is an adult over 18 years of age and is otherwise competent to bring this lawsuit.

2. Defendant Liberty Mutual Group, Inc., doing business as "Liberty Mutual Insurance" (hereinafter "Defendant Liberty Mutual") is a foreign insurance company incorporated in Massachusetts doing business throughout the State of New Mexico and is otherwise subject to the jurisdiction of this Court pursuant to § 38-3-1 (A), (F) NMSA 1978 (2005).

3. The automobile accident that is the subject of this complaint occurred on August 6, 2016, on NM State Road 22 at approximately Milepost # 5.5 in New Mexico.

4. This Court has jurisdiction to hear these claims and venue is properly before this Court.

## GENERAL ALLEGATIONS COMMON TO
## ALL COUNTS OF THIS COMPLAINT

5.     On August 6, 2016, a motorist hit Plaintiff while he was riding his 2015 Harley motorcycle,

Vin # 1HD1PXN13FB958247.   The impact knocked him off his motorcycle and he sustained

significant injuries as a result of being struck by the underinsured driver.

6.     As a direct and proximate result of the underinsured motorist's negligence, Plaintiff suffered

personal injuries, damage and loss, including but not limited to, past and future medical expenses,

permanent loss of function, emotional distress, loss of ability to enjoy life and participate in hobbies

and recreational activities, pain and suffering, discomfort, inconvenience and other damages.

7.     At the time of the subject accident the underinsured motorist was driving at a recklessly high

rate of speed calculated to be 102 MPH in a 55 MPH zone, when she lost control of her car sliding

into Plaintiff's motorcycle. On February 17th, 2017 the Sandoval County Grand Jury of the State of

New Mexico returned a nine count criminal indictment against said underinsured motorist including

Count#2 being a  3rd degree felony for great bodily injury by vehicle in the unlawful operation of a

motor vehicle while under the influence of intoxicating liquor or any drug or in a reckless manner

because of the underinsured motorist's outrageous reckless behavior that directly caused Plaintiff's

injuries. Under New Mexico law Liberty Mutual is also legally responsible for punitive damages,

based upon said underinsured motorist's outrageous and reckless conduct.

8.     At the time of the subject motor vehicle crash, the underinsured motorist did have liability

insurance coverage but it was inadequate to fully compensate Plaintiff.

## COUNT I: UNDERINSURED MOTORIST CLAIM
## AGAINST DEFENDANT LIBERTY MUTUAL INSURANCE

9.     Plaintiff re-alleges all preceding paragraphs of this complaint as though set forth fully herein.

*Page 2 of 5*

10.     Defendant Liberty Mutual is properly joined as a party by its insured, the Plaintiff, and is

otherwise subject to the jurisdiction of this Court pursuant to § 38-3-1 (A), (F) NMSA 1978 (2004).

11.     At all times material hereto, Defendant Liberty Mutual was the insurance company that

provided uninsured/underinsured motorist coverage to its insured, Plaintiff Woodall, under policy

number #A02-298-021072-60 6 8 issued pursuant to § 66-5-301 et seq NMSA (1978). The certified

copy of said policy was emailed on September 13, 2016 to Plaintiff's counsel's office by Ms. Luann

Mueller of Liberty Mutual's "Policy Copy Support" and is Attachment #1 attached hereto.

12.     Said Policy #A02-298-021072-60 6 8 provides liability coverage at "100,000 each person

/ 300,000 each accident" on both of Plaintiff's cars with liability coverage billed separately for each

car. On the same "Policy Declaration" page the certified policy also state the insured has Uninsured

Motorists coverage of "$25,000 each person/$50,000 each accident" with a separate premium for

such UM coverage charged/billed separately for each car.

13.     However, this certified Liberty Mutual Policy #A02-298-021072-60 6 8 also does NOT

contain any written and knowing signed rejection/waiver of UM/UIM coverage equal to the liability

limits of "100,000 each person / 300,000 each accident", which is required under New Mexico law.

Accordingly, Plaintiff requests the Court reform said Policy's UM/UIM limits to match the liability

coverage limits of "100,000 each person / 300,000 each accident" AND such UM coverage of both

cars also stacks. Thus, the Plaintiff has $200,000 of UM/UIM coverage under his cars Policy #A02-

298-021072-60 6 8, Attachment #1.

14.     At all times material hereto, Defendant Liberty Mutual was the insurance company that

provided uninsured/underinsured motorist coverage to its insured, Plaintiff Woodall, under policy#

A-02-298-251148-10 6 2 issued pursuant to § 66-5-301 et seq NMSA (1978).  The certified copy

of said policy was emailed on September 13, 2016 to Plaintiff's counsel's office by Ms. Luann Mueller of Liberty Mutual's "Policy Copy Support" and is Attachment #2 attached hereto.

15.     Said Policy #A02-298-251148-10 6 2 provides for liability coverage at "100,000 each person / 300,000 each accident" on both of Plaintiff's motorcycles with liability coverage charged separately to each bike.   The "Policy Declarations" of the Liberty Mutual certified policy also simply states that: "Uninsured Motorists has Been Reject".

16.     However, there is NO valid signed rejection/waiver of UM coverage form attached to said certified Policy as required by New Mexico law.  Accordingly, New Mexico's UM/UIM law requires the Court reform said motorcycle policy #A-02-298-251148-10 6 2 so that the UM limits of coverage match the $100,000 per person liability limits AND the UM coverage of both motorcycles stack, resulting in $200,000 of UM/UIM coverage for Mr. Woodall under Policy #A02-298-251148-10 6 2.

17.     The above described policies were effective on August 6, 2016, the date of the subject motor vehicle crash when a car negligently crashed into Plaintiff's motorcycle.

18.     Plaintiff was a first party insured.  There were two vehicles insured under the subject policy #A-02-298-021072-60 6 8 and two motorcycles insured under the subject policy #A-02-298-251148-10 6 2 on August 6, 2016, carrying liability and uninsured/underinsured motorist coverage of $100,000 each vehicle for a total combined "stacked" coverage of $400,000 in uninsured/underinsured motorist coverage for the subject motor vehicle crash.

19.     On the date of the subject motor vehicle crash, the underinsured motorist had liability insurance coverage of $25,000 available to compensate Plaintiff and other injured parties for injuries and damages.  The amount of $4,100 was recovered with the permission of Liberty Mutual.

*Page 4 of 5*

20.     Underinsured motorist is an uninsured motorist as described and defined in the uninsured/underinsured motorist policies issued by Defendant Liberty Mutual to Plaintiff Woodall.

21.     Under the terms of the subject insurance policies, Defendant Liberty Mutual is liable to pay Plaintiff's damages, which Plaintiff is legally entitled to recover from the underinsured motorist because Plaintiff sustained bodily injuries caused by an accident, said accident having been caused by the underinsured motorist.

22.     Defendant Liberty Mutual has failed to tender the undisputed value of the case in violation of New Mexico law.

WHEREFORE, Plaintiff prays for an Order of the Court giving judgment against Defendant Liberty Mutual in an amount reasonable to compensate Plaintiff for his injuries, damage and loss, for punitive damages and awarding Plaintiff the costs of this litigation, pre and post judgment interest and granting such further relief as may be deemed just and proper.

Respectfully submitted;

WILL FERGUSON & ASSOCIATES

*/s/ Robert C. Gutierrez*
ROBERT C. GUTIERREZ
10090 Coors Blvd NW Ste A
Albuquerque, NM 87114
Phone: (505)243-5566
Fax: (505)897-2279
bob@fergusonlaw.com

*Page 5 of 5*

 **Liberty Mutual.**
**INSURANCE**

Liberty Mutual Insurance
350 E 96th Street
Indianapolis, IN 46240
Telephone: 317-581-6804

September 13, 2016

Zach Weichman
PO Box 7230
London, KY 40742

| | |
|---|---|
| Insured Name: | VIVIAN L WOODALL |
| | MITCHELL F WOODALL |
| Policy Number: | AO229802107260 |
| Claim Number: | 034189020 |
| Effective Date: | 5/26/2016 |

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course of its business.

Sincerely,

Luann Mueller
Policy Copy
Support

LM
Enclosures

PL Policy/Dec Request

**Attachment #1**



# Policy Declarations

## A summary of your auto insurance coverage

Reason for your new declarations page: Policy Change 01

- Eliminate Vehicle 2

Effective date of this change: 05/26/2016







**Policy Declarations**

**ACTION REQUIRED:**

Please review and keep for your records.

### INSURANCE INFORMATION

| | |
|---|---|
| Named Insured: | Vivian L Woodall<br>Mitchell F Woodall |
| Policy Number: | AO2-298-021072-60 6 8 |
| Policy Period: | 05/09/2016-05/09/2017 12:01 AM standard time at the address of the Named Insured as stated below. |
| Mailing Address: | 22 Fire Lizard Lane<br>Edgewood NM 87015-8022 |
| Affinity Affiliation: | Sandia Laboratory Federal Credit Union |

**QUESTIONS ABOUT YOUR POLICY?**

By Phone
For Service:
1-800-225-7014

Liberty Mutual
PO Box 970
Mishawaka, IN 46546

To report a claim
By Phone
1-800-2CLAIMS
(1-800-225-2467)

### Vehicles Covered by Your Policy

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2006 | BUICK | LACROSSE | 2G4WD582761268859 |
| 3 | 2007 | VOLVO | XC90 | YV4CZ852771394013 |

### Coverage Details

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the indicated coverage for that vehicle.

THIS IS NOT YOUR AUTO INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.

### Coverage Information

Premium Adjustment from 05/26/2016 to 05/09/2017

VEH 2
$663 CR

Total Adjustment: $663.00CR

| | |
|---|---|
| **Total Annual Policy Premium** | **$1,985.00** |
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

| COVERAGE | LIMITS | | PREMIUM PER | |
|---|---|---|---|---|
| | | | VEHICLE VEH 1 | VEH 3 |
| **A. Liability** | | | $580 | $455 |
| Bodily Injury | $ 100,000 | Each Person | Yes | Yes |
| | $ 300,000 | Each Accident | | |
| Property Damage | $ 50,000 | Each Accident | | |
| **B. Medical Payments** | | | | |
| | $ 5,000 | Each Person | $85 | $67 |



## Coverage Information (continued)

| COVERAGE | LIMITS | | PREMIUM PER | |
|---|---|---|---|---|
| | | | VEHICLE VEH 1 | VEH 3 |

**Policy Number:**
AO2-298-021072-60 6 8
**Declarations effective:**
05/26/2016

### C. Uninsured Motorists

| | | | | |
|---|---|---|---|---|
| Uninsured Motorists | $ 25,000 | Each Person | $165 | $165 |
| Bodily Injury | $ 50,000 | Each Accident | | |
| Property Damage | $ 25,000 | Each Accident | | |

### D. Coverage for Damage to Your Auto

| | | |
|---|---|---|
| Collision | $250 | |
| Actual Cash Value Less Deductible Shown | | |
| Veh 3 $1000 | | |
| Other Than Collision | $117 | $101 |
| Actual Cash Value Less Deductible Shown | | |
| Veh 1 $250      Veh 3 $1000 | | |

| | | |
|---|---|---|
| Annual Premium Per Vehicle: | $947 | $1,038 |

| | |
|---|---|
| **Total Annual Policy Premium** | **$1,985.00** |

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

## Discounts and Benefits

Your discounts and benefits have been applied to your Total Annual Policy Premium.

VEHICLE DISCOUNTS

| | VEH 1 | VEH 3 |
|---|---|---|
| Anti-Lock Braking System | Yes | Yes |
| Passive Restraint - Requires Med Pay (Motorized Seat Belts and/or Air Bags) | Yes | Yes |
| Anti-Theft Device(s) | Yes | Yes |

POLICY DISCOUNTS

- TruStage™ Auto and Homeowners Insurance Program
- Multi-Car
- Preferred Auto Rating Plan (Preferred Driver)

## Driver Information

| DRIVER NAME | LICENSE NUMBER | DATE OF BIRTH | STATE |
|---|---|---|---|
| Vivian L Woodall | 108730056 | 08/11/1958 | NM |
| Mitchell F Woodall | 107724257 | 03/03/1959 | NM |

To ensure proper coverage, please contact us to add drivers not listed above.



## Safe Driver Insurance Plan

No Charges Apply - SCO

## Endorsements - Changes to Your Policy

Amendment of Policy Provisions - New Mexico  AS2162  06  07
Automobile Amendatory Endorsement  AS2258  08  06
Amendment of Policy Definitions  AS2344  04  08
Uninsured Motorists Coverage - New Mexico  AS3616  05  08
Split Liability Limits  PP 03 09 04 86
Split Uninsured Motorists Limits - New Mexico  PP 04 33 12 89
Mexico Extension Endorsement  AS1006  12  89
Nuclear, Bio-Chemical & Mold Exclusion Endorsement  AS2228  07  05
Automatic Termination Endorsement  AS1046  12  89
Coverage For Damage To Your Auto Exclusion Endorsement  PP 13 01 12 99
Notice to Others if Cancellation Occurs  AS1019  12  89
Membership in Liberty Mutual Holding Company Inc.  2340 e

LibertyGuard Auto Policy Declarations provided and underwritten by
Liberty Mutual Fire Insurance Company, Boston, MA.

Policy Number:
AO2-298-021072-60 6 8
Declarations effective:
05/26/2016

This policy, including endorsements listed above,
is countersigned by:

_____
Authorized Representative

_____
President

_____
Secretary



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 300 offices throughout the United States. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**                    Liberty Mutual Insurance Group

AUTO 3422 Ed. 6-94 R1

**LIBERTYGUARD AUTO POLICY**

**QUICK REFERENCE**

**DECLARATIONS PAGE**

Your Name and Address
Your Auto or Trailer
Policy Period
Coverages and Amounts of Insurance

|  | Beginning On Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |

**PART A - LIABILITY COVERAGE**

| | |
|---|---|
| Insuring Agreement | 2 |
| Supplementary Payments | 2 |
| Exclusions | 2 |
| Limit of Liability | 3 |
| Out of State Coverage | 3 |
| Financial Responsibility | 4 |
| Other Insurance | 4 |

**PART B - MEDICAL PAYMENTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 4 |
| Exclusions | 4 |
| Limit of Liability | 4 |
| Other Insurance | 5 |

**PART C - UNINSURED MOTORISTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 5 |
| Exclusions | 5 |
| Limit of Liability | 6 |
| Other Insurance | 6 |
| Arbitration | 6 |

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

| | |
|---|---|
| Insuring Agreement | 7 |
| Transportation Expenses | 7 |
| Exclusions | 8 |
| Limit of Liability | 9 |
| Payment of Loss | 9 |
| No Benefit to Bailee | 9 |
| Other Sources of Recovery | 9 |
| Appraisal | 9 |

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS** . . . . . . . . . . . . . . 10

**PART F - GENERAL PROVISIONS**

| | |
|---|---|
| Bankruptcy | 10 |
| Changes | 10 |
| Fraud | 10 |
| Legal Action Against Us | 10 |
| Our Right To Recover Payment | 11 |
| Policy Period And Territory | 11 |
| Termination | 11 |
| Transfer Of Your Interest In This Policy | 12 |
| Two Or More Auto Policies | 12 |

**\*MUTUAL POLICY CONDITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . 12

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



## AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

**B.** "We," "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means in, upon, getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

**J.** "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup or van that:

(1) has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2) is not used for the delivery or transportation of goods and materials unless such use is:

(a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

(b) for farming or ranching.

This provision (J.2.) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
a. breakdown;      d. loss; or
b. repair;            e. destruction.
c. servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.



## PART A - LIABILITY COVERAGE

**INSURING AGREEMENT**

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

**SUPPLEMENTARY PAYMENTS**

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of

attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

**EXCLUSIONS**

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that "insured."

3. For "property damage" to property:
   a. rented to;
   b. used by; or
   c. in the care of;
   that "insured."
   This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:
   a. selling;       d. storing; or
   b. repairing;     e. parking;
   c. servicing;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:
   a. you;
   b. any "family member;" or
   c. any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in exclusion A.6.
   This exclusion (A.7.) does not apply to



the maintenance or use of a:

a. Private passenger auto;

b. Pickup or van that:

  (1) You own; or

  (2) You do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

    a. breakdown;    d. loss; or
    b. repair;       e. destruction; or
    c. servicing;

c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

9. For "bodily injury" or "property damage" for which that "insured:"

a. is an insured under a nuclear energy liability policy; or

b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. American Nuclear Insurers;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

a. Has fewer than four wheels; or

b. Is designed mainly for use off public roads.

This exclusion (B.1.) does not apply:

a. While such vehicle is being used by an "insured" in a medical emergency; or

b. To any "trailer."

2. Any vehicle, other than "your covered auto," which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (B.3.) does not apply to you while you are maintaining or

"occupying" any vehicle which is:

a. owned by a "family member;" or

b. furnished or available for the regular use of a "family member."

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.



**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

**INSURING AGREEMENT**

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and

2. Sustained by an "insured."

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

1. You or any "family member:"

a. while "occupying;" or

b. as a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any "insured" for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

a. owned by you; or

b. furnished or available for your regular use.

6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

a. private passenger auto;

b. pickup or van that you own; or

c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

a. discharge of a nuclear weapon (even if accidental);

b. war (declared or undeclared);

c. civil war;

d. insurrection; or

e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a. nuclear reaction;

b. radiation; or

c. radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

a. competing in; or

b. practicing or preparing for;

any prearranged or organized racing or speed contest.

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"



2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

1. Sustained by an "insured;" and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

a. you or any "family member;"

b. a vehicle which you or any "family member" are "occupying;" or

c. "your covered auto."

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. denies coverage; or

b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

### EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying," or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured:"

1. If that "insured" or the legal



representative settles the "bodily injury" claim without our consent.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

**A.** If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured;"

from the owner or operator of an "uninsured motor vehicle," then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the



minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision," only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by the:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provide d for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail. Water or flood;
7. Malicious mischief or vandalism
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

**C.** "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

### TRANSPORTATION EXPENSES

In addition, we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Temporary transportation expenses incurred by you in the event of a loss to "your covered auto." We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto." We will pay for loss of use expenses if the loss is caused by:

   a. Other than "collision" only if the Delcarations indicate that Other Than Collision Coverage is provided for any "your covered auto."

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto."

If the loss is caused by a total theft of "your covered auto" or a "non-owned auto," we will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

If the loss is caused by other than theft of a "your covered auto" or a "non-owned auto," we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto."



**EXCLUSIONS**

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical or electrical breakdown or failure; or
   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:
   a. radioactive contamination;
   b. discharge of any nuclear weapon (even if accidental);
   c. war (declared or undeclared);
   d. civil war;
   e. insurrection; or
   f. rebellion or revolution.

4. Loss to:
   a. Any electronic equipment designed for the reproduction of sound, including, but not limited to:
      (1) radios and stereos;
      (2) tape decks; or
      (3) compact disc players;
   b. Any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:
      (1) citizens band radios;
      (2) telephones;
      (3) two-way mobile radios;
      (4) scanning monitor receivers;
      (5) television monitor receivers;
      (6) video cassette recorders;
      (7) audio cassette recorders; or
      (8) personal computers;
   c. tapes, records, discs, or other media used with equipment described in a. or b.; or
   d. any other accessories used with equipment described in a. or b.

   This exclusion (4.) does not apply to:
   a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:
      (1) The equipment is permanently installed in "your covered auto" or any "non-owned auto;" or
      (2) The equipment is:
         (a) Removable from a housing unit which is permanently installed in the auto;
         (b) Designed to be solely operated by use of the power from the auto's electrical system; and
         (c) In or upon "your covered auto" or any "non-owned auto;"

         at the time of the loss.
   b. any other electronic equipment that is:
      (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or
      (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

5. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:
   a. acquire during the policy period; and
   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:
   a. awnings or cabanas; or
   b. equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or location of radar or laser.



10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   a. special carpeting and insulation, furniture or bars;

   b. facilities for cooking and sleeping;

   c. height-extending roofs; or

   d. custom murals, paintings or other decals or graphics.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. selling;      d. storing; or

   b. repairing;    e. parking;

   c. servicing;

   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

13. Loss to "your covered auto" or any "non-owned auto," located inside a facility designed for racing, for the purpose of:

   a. competing in; or

   b. practicing or preparing for;

   any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

   a. you; or

   b. any "family member;"

   if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member," pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a trailer is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto;"

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:



1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

**B.** We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:
   a. to physical exams by physicians we select. We will pay for these exams.
   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:
   a. medical reports; and
   b. other pertinent records.

5. Submit a proof of loss when required by us.

**C.** A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all



the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. at least 10 days notice:

   (1) if cancellation is for nonpayment of premium; or

   (2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. at least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. for nonpayment of premium; or

   b. if your driver's license or that of:

   (1) any driver who lives with you; or

   (2) any driver who customarily uses "your covered auto;"

   has been suspended or revoked. This must have occurred:

   (1) during the policy period; or

   (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. if the policy was obtained through material misrepresentation.

B. **Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

C. **Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by



this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto."

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

PRESIDENT

SECRETARY

Includes Copyrighted material of Insurance Services Office, Inc.,
with its permission.
Copyright, Insurance Services Office, Inc., 1994


**Liberty Mutual.**
INSURANCE

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMENDMENT OF POLICY PROVISIONS - NEW MEXICO

AS 2162 06 07
(PP 01 96 06 94)

**I.  Part A - Liability Coverage**

  **A.**  Paragraph **A.** of the **Insuring Agreement** is replaced by the following:

  **A.** We will pay damages, other than punitive or exemplary damages, for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.  Damages include prejudgment interest awarded against the "insured".  We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.  We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

  **B.**  Exclusion **A.3.** is replaced by the following:

  We do not provide Liability Coverage for any "insured":

  **3.** For "property damage" to property:
    **a.**  Rented to;
    **b.**  Used by; or
    **c.**  In the care of;
    that "insured":
    This Exclusion **(A.3.)** does not apply to "property damage" to a:
    **a.**  Residence or private garage; or
    **b.**  Vehicle you do not own if:
      **(1)** A licensed automobile dealer provides the vehicle without charge to you or a "family member":
        **(a)** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;
        **(b)** To demonstrate the vehicle; or
        **(c)** As a promotional or courtesy vehicle; or
      **(2)** A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or without charge, to you or a

"family member":
        **(a)** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;
        **(b)** To demonstrate the vehicle; or
        **(c)** As a promotional or courtesy vehicle; and
    The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:
        **PRIMARY LIABILITY ASSIGN-MENT**
        In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

  **C.**  The **Other Insurance** Provision is replaced by the following:
  **OTHER INSURANCE**
  If there is other applicable liability insurance, we will pay only our share of the loss.  Our share is the proportion that our limit of liability bears to the total of all applicable limits.  Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

  However, we will provide primary insurance for a vehicle you do not own if:

  **1.** A licensed automobile dealer provides the vehicle without charge to you or a "family member":
    **a.**  For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;
    **b.**  To demonstrate the vehicle; or
    **c.**  As a promotional or courtesy vehicle; or
  **2.** A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or


**Liberty Mutual.**
INSURANCE

without charge, to you or a "family member":

**a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

**b.** To demonstrate the vehicle; or

**c.** As a promotional or courtesy vehicle; and

The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:

> **PRIMARY LIABILITY ASSIGN-MENT**
> In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

**II. Part D - Coverage For Damage To Your Auto**

Paragraph **C.** of the **Insuring Agreement** is replaced by the following:

"Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   **a.** Breakdown;
   **b.** Repair;
   **c.** Servicing;
   **d.** Loss; or
   **e.** Destruction.

However, "non-owned auto" does not include any vehicle you do not own if:

1. A licensed automobile dealer provides the vehicle without charge to you or a "family member":

   **a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

   **b.** To demonstrate the vehicle; or

   **c.** As a promotional or courtesy vehicle; or

2. A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or without charge, to you or a "family member":

   **a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

   **b.** To demonstrate the vehicle; or

   **c.** As a promotional or courtesy vehicle; and

The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:

> **PRIMARY LIABILITY ASSIGNMENT**
> In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

**III. PART F - GENERAL PROVISIONS**

Part **F** is amended as follows:

**A.** The Termination provision is amended as follows:

**TERMINATION**

The Nonrenewal section is replaced by the following:

**Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is less than 6 months, we will have the right not to renew or continue every 6 months, beginning 6 months from its original effective date.

**B.** The following is added to the Two Or More Auto Policies provision:

**TWO OR MORE AUTO POLICIES**

1. This provision does not apply to Uninsured Motorists Coverage.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1993


**Liberty Mutual.**
INSURANCE

## AUTOMOBILE AMENDATORY ENDORSEMENT

AS 2258 08 06

**I. DEFINITIONS**

The **Definitions** section is revised as follows:

**A.** The definition of **Your Covered Auto** is replaced with the following:

"**Your Covered Auto**" means:

**1.** Any vehicle shown in the Declarations.

**2.** A **newly acquired auto**.

**3.** Any **trailer** you own.

**4.** Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

This provision **(4.)** does not apply to Coverage For Damage To Your Auto.

**B.** The definition of **Newly Acquired Auto** is added as follows:

"**Newly Acquired Auto**":

**1. Newly acquired auto** means any of the following types of vehicles you become the owner of during the policy period:

**a.** A private passenger auto; or

**b.** A pickup or van, for which no other insurance policy provides coverage, that:

**(1)** Has a Gross Vehicle Weight of less than 10,000 lbs.; and

**(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

**(a)** Incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

**(b)** For farming or ranching.

For this definition to apply to a **newly acquired auto**, which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

**2.** Coverage for a **newly acquired auto** is provided as described below. If you ask us to insure a **newly acquired auto** after a specified time period described below has elapsed, any coverage we provide for a **newly acquired auto** will begin at the time you request the coverage.

**a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a **newly acquired auto** will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

However, for this coverage to apply to a **newly acquired auto** that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

If a **newly acquired auto** replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

**b.** Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

**(1)** 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

**(2)** Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto,** a Collision deductible of $500 will apply.

**c.** Other Than Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

**(1)** 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage



**AS 2258 08 06**

we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, an Other Than Collision deductible of $500 will apply.

C. "**necessary medical**" - when applied to services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means services or supplies provided by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are:

1. Required to identify or treat an injury caused by an accident covered by this policy;
2. Consistent with symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;
3. Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;
4. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;
5. Not primarily for the convenience of the covered person, or his or her physician, hospital, or other health care provider;
6. The most appropriate supply or level of service that can be safely provided to the covered person; and
7. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment;

However, necessary medical services do not include expenses for any of the following:

1. Nutritional supplements or over-the-counter drugs;
2. Experimental services or a supply, which means services or supplies that we determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the

condition for which its use is proposed.

3. In patient services or supplies provided to the covered person when these could safely have been provided to the covered person as an outpatient.

D. "**reasonable expenses**" - when applied to medical services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means the least of:

1. The actual charge;
2. The charge negotiated with a provider; or
3. The charge determined by us based on a methodology using a database designed to reflect amounts charged by providers of medical services or supplies within the same or similar geographic region in which you receive your medical services or supplies. The database will reflect (a) service charge data regardless of the provider's specialty and (b) in the case of new procedures, services or supplies, or existing procedures, services or supplies for which there is little or no charge data, a comparison to commonly used procedures, services or supplies.

II. **PART A - LIABILITY COVERAGE**
Exclusion **4.** is under paragraph **B.** of the Exclusions section of **Part A** is replaced by the following:

4. Any vehicle, while being used for:
   a. competing in; or
   b. practicing or preparing for
   any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

III. **PART B - MEDICAL PAYMENTS COVERAGE**
Exclusion **11.** is under the Exclusions section of **Part B** is replaced by the following:

11. Sustained while **occupying** any vehicle while being used for:
    a. competing in; or
    b. practicing or preparing for
    any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

IV. **PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

A. Paragraph **A.** of the **Insuring Agreement** of **Part D** is replaced by the following:
**INSURING AGREEMENT**
A. We will pay for direct and accidental loss to **your covered auto** or any



AS 2258 08 06

non-owned auto, including their equipment, subject to **Customized Equipment Coverage**, minus any applicable deductible shown in the Declarations. If loss to more than one **your covered auto** or **non-owned auto** results from the same collision, only the highest applicable deductible will apply. We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto** we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

B. The following **Customized Equipment Coverage** provision is added under **Part D:**

### CUSTOMIZED EQUIPMENT COVERAGE

A. We will pay up to $500 for theft or damage to **customized equipment** if the loss is caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a **non-owned auto** keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for **your covered auto** or any **non-owned auto.**

B. "**Customized equipment**" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

1. are permanently installed or attached by bolts or brackets;

2. are removable from a housing unit that is permanently installed inside the auto;

3. are permanently bonded to the vehicle by an adhesive or welding procedure; or

4. change the appearance or performance of the vehicle including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered **customized equipment.**

This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered **customized equipment.**

C. If you have purchased additional coverage for **customized equipment** we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

D. The most we will pay for parts, equipment and accessories that are:

a. not installed by the auto manufacturer or dealer and

b. permanently installed in or upon the auto

is the actual cash value of the vehicle not including such parts, equipment and accessories.

C. The **Transportation Expenses** provision of **Part D** is replaced by the following:

### TRANSPORTATION EXPENSES

In addition, we will pay up to $15 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies in the event of a loss to your covered auto if the loss is caused by:



**Liberty Mutual.**
INSURANCE

**a.** Other than collision only if the Declarations indicate Other Than Collision Coverage is provided for that auto.

**b.** Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

If the loss is caused by a total theft of your covered auto, we will pay only transportation expenses incurred during the period:

**1.** Beginning 48 hours after the theft; and

**2.** Ending when your covered auto is returned to use or we pay for its loss.

**D.** Exclusion **4.** is replaced by the following:

**4.** We will not pay for loss to equipment that is not permanently installed in or upon **your covered auto** or any **non-owned auto**. This consists of any equipment that is either designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

**a.** radios and stereos;

**b.** tape decks;

**c.** compact disc players and burners;

**d.** digital video disc (DVD) players and burners;

**e.** citizens band radios;

**f.** scanning monitor receivers;

**g.** television monitor receivers;

**h.** global positioning system (GPS) receivers and/or components;

**i.** video cassette players and recorders;

**j.** audio cassette recorders; or

**k.** personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

**E.** Exclusion **13.** is replaced by the following:

**13.** Loss to **your covered auto** or any **non-owned auto** while the car is being used for:

**a.** competing in; or

**b.** practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

**F.** Exclusion **15.** is added as follows:

**15.** We will not pay for loss to **customized equipment** in excess of

what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

**G.** Exclusion **16.** is added as follows:

**16.** We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

**H.** Paragraph **B** of the **Limit of Liability** provision of **Part D** is added as follows:

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any **customized equipment**.

**V. PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

**Part E** is amended as follows:

**A.** Paragraph **B.** of **Part E** is replaced by the following:

**B.** A person seeking any coverage must:

**1.** Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.

**2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

**3.** Submit, as often as we reasonably require, within 30 days of our request:

**a.** To physical and mental exams by physicians we select under terms we require. We will pay for these exams.

**b.** To interviews and recorded statements without the need for us to conduct an examination under oath.

**c.** To examination under oath and subscribe the same.

**4.** Authorize us to obtain, within 30 days of our request:

**a.** Medical reports; and

**b.** Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.



AS 2258 08 06

5. Submit a proof of loss when required by us within 30 days of our request.

## VI. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. The **Fraud** provision is replaced by the following:

**FRAUD**

This policy will not provide coverage under any part of this policy for any insured or any other person or entity seeking benefits under this policy (whether before or after a loss) who:

a. conceals or misrepresents any material fact or circumstance,

b. makes false statements or

c. engages in fraudulent conduct,

any of which relate to a loss, an accident, this insurance or the application for this policy.

Includes some copyrighted material of Insurance Services Office, Inc., with its permission.


**Liberty**
**Mutual.**
INSURANCE

## AMENDMENT OF POLICY DEFINITIONS

**THIS ENDORSEMENT CHANGES YOUR POLICY.  IT REPLACES ALL OTHER REFERENCES TO THE SAME SECTIONS OF THE POLICY.**

The following is added to item **A.** under the policy **DEFINITIONS:**

3. the partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

The above, only applies if the civil union or partnership was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

1. The end of 90 days following the change of residency;

2. The effective date of another policy listing the spouse or partner defined above as a named insured; or

3. The end of the policy period.

Paragraph **A.** of the **TRANSFER OF YOUR INTEREST IN THIS POLICY** is deleted. It is replaced with the following:

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

1. the surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death.  Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the declarations; and

2. the legal representative of the deceased person as if a named insured shown in the Declarations.  This applies only with regard to the representative's legal responsibility to maintain or use "your covered auto".

Section 1. only applies if the union or partnership is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

All other terms and conditions of this policy remain the same.


Liberty Mutual.
INSURANCE

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS COVERAGE - NEW MEXICO

PERSONAL AUTO
AS 3616 05 08

**I. PART C - UNINSURED MOTORISTS COVERAGE**

Part **C** is replaced by the following:

**INSURING AGREEMENT**

**A.** We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an:

1. "Uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury":

   **a.** Sustained by an "insured"; and

   **b.** Caused by an accident; and

2. "Uninsured motor vehicle" because of "property damage" caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle". With respect to damages an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle", we will pay under this coverage only if **1.** or **2.** below applies:

1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

   **a.** Have been given prompt written notice of such tentative settlement; and

   **b.** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Property damage" as used in this endorsement means injury to or destruction of the property of an "insured".

**D.** "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies at the time of the accident is less than the sum of the limits of liability applicable to the "insured" for Uninsured Motorists Coverage under this policy or any other policy.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".  However, this exception (**1.**) does not apply for damages sustained by you or any "family member" if the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage under this policy or any other policy.

2. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   **a.** Denies coverage; or

   **b.** Is or becomes insolvent.

3. Owned or operated by a self-insurer under any applicable motor vehicle law.

Copyright, Insurance Services Office, Inc.,  1994



E. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no liability bond or policy applies at the time of the accident.

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" or "property damage" without hitting:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

3. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent; or

2. Owned by or furnished or available for the regular use of you or any "family member". However, this exception (2.) does not apply for damages sustained by you or any "family member" if liability coverage is excluded for such damages under this policy or any other policy.

In addition, neither "uninsured motor vehicle" nor "underinsured motor vehicle" includes any vehicle or equipment:

1. Operated on rails or crawler treads.

2. Designed mainly for use off public roads while not on public roads.

3. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "property damage" or "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" or "property damage" claim without our consent.

2. When "your covered auto" is being used to carry persons or property for a fee. This exclusion (A.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

4. For the first $250 of the amount of "property damage" to the property of each "insured" as the result of any one accident.

5. While traveling as a passenger in any motor vehicle operated by a named excluded driver.

B. This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:

   a. Workers' compensation law; or

   b. Disability benefits law.

2. Any insurer of property.

## LIMIT OF LIABILITY

A. If "bodily injury" or "property damage" is sustained in an accident by you or any "family member", our maximum limit of liability for all damages in any such accident is the sum of the limits of liability for Uninsured Motorists Coverage shown in the Declarations applicable to each vehicle. Subject to this maximum limit of liability for all damages:

1. The most we will pay for "bodily injury" or "property damage" sustained in such accident by an "insured" other than you or any "family member" is that "insured's" pro rata share of the limit shown in the Declarations applicable to the vehicle that "insured" was "occupying" at the time of the accident;

2. You or any "family member" who sustains "bodily injury" or "property damage" in such accident will also be entitled to a pro rata share of the limit described in paragraph 1. above.

A person's pro rata share shall be the proportion that that person's damages bears to the total damages sustained by all "insureds".

The maximum limit of liability is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

Copyright, Insurance Services Office, Inc., 1994
AS 3616 05 08



3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. If "bodily injury" or "property damage" is sustained by any "insured" other than you or any "family member" in an accident in which neither you nor any "family member" sustained "bodily injury" or "property damage" the limit of liability shown in the Declarations applicable to the "your covered auto" the "insured" was "occupying" at the time of the accident is our maximum limit of liability for all damages resulting from any such accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

C. With respect to damages caused by an accident with an "underinsured motor vehicle", the limit of liability shall be reduced by all sums paid because of "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part **A** of the policy.

D. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or Part **B** of this policy.

E. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

F. No payment will be made for loss paid or payable to the "insured" under Part **D** of the policy.

**OTHER INSURANCE**

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

With respect to "property damage", this insurance shall apply only after the limits of any other collectible insurance applicable to the damaged property have been exhausted.

**ARBITRATION**

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally;

unless the arbitration costs are awarded to the prevailing party by the arbitrators.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages.

**ADDITIONAL DUTY**

A person seeking Uninsured Motorists Coverage under the definition of "underinsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

Copyright, Insurance Services Office, Inc., 1994



## II. PART F - GENERAL PROVISIONS

Part **F** is amended as follows:

**A.** The following is added to the Our Right To Recover Payment provision:

### OUR RIGHT TO RECOVER PAYMENT

Our rights do not apply under Paragraph **A.** with respect to coverage under the definition of "underinsured motor vehicle" for Uninsured Motorists Coverage if we:

**1.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle" and

**2.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**1.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

**2.** We also have a right to recover the advanced payment.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

 Copyright, Insurance Services Office, Inc., 1994 AS 3616 05 08



## SPLIT LIABILITY LIMITS

PP 03 09 04 86

### SCHEDULE

| | | |
|---|---|---|
| **Bodily Injury Liability** | $ _____ | each person |
| | $ _____ | each accident |
| **Property Damage Liability** | $ _____ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident.  Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.  The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1985


**Liberty Mutual.**
INSURANCE

PERSONAL AUTO
PP 04 33 12 89

# SPLIT UNINSURED MOTORISTS LIMITS - NEW MEXICO

## SCHEDULE

| Uninsured Motorists Coverage | Limit of Liability | Premium | | |
|---|---|---|---|---|
| | | Auto 1 | Auto 2 | Auto 3 |
| Bodily Injury Liability | $ _____ each person $ _____ each accident | | | |
| Property Damage Liability | $ _____ each accident | $ _____ | $ _____ | $ _____ |

Paragraph A. or B. of the Limit of Liability provision for Uninsured Motorists Coverage is replaced by A. or B. as follows:

**LIMIT OF LIABILITY**

**A.** If "bodily injury" or "property damage" is sustained in an accident by you or any "family member:"

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability Uninsured Motorists Coverage;

2. Subject to the maximum limit for each person described in 1. above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Uninsured Motorists Coverage.

3. Our maximum limit of liability for all "property damage" resulting from any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability Uninsured Motorists Coverage.

4. Subject to the maximum limits of liability set forth in 1., 2. or 3. above:

   a. the most we will pay for "bodily injury" or "property damage" sustained in such accident by an "insured" other than you or any "family member" is that "insured's" pro-rata share of the each person or each accident limit of liability shown in the Schedule or in the Declarations applicable to the vehicle that "insured" was "occupying" at the time of the accident, and

   b. you or any "family member" who sustains "bodily injury" or "property damage" in such accident will also be entitled to a pro-rata share of the each person or each accident limit described in paragraph 4.a. above.

A person's pro-rata share shall be the proportion that that person's damages bears to the total damages sustained by all "insureds."

The maximum limit of liability is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

**B.** If "bodily injury" or "property damage" is sustained by an "insured" other than you or any "family member" in an accident in which neither you nor any "family member" sustained "bodily injury" or "property damage:"

Copyright, Insurance Services Office, Inc., 1989



1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in such accident will be the each person limit of liability shown in the Schedule or in the Declarations for Bodily Injury Liability Uninsured Motorists Coverage applicable to the "your covered auto" that "insured" was "occupying" at the time of that accident.

2. Subject to this limit for each person, our maximum limit of liability for all damages arising out of "bodily injury" sustained in such accident is the each accident limit of liability shown in the Schedule or in the Declarations for Bodily Injury Liability Uninsured Motorists Coverage applicable to the "your covered auto" that "insured" was "occupying" at the time of the accident.

3. Our maximum limit of liability for all "property damage" resulting from such accident is the each accident limit of liability shown in the Schedule or in the Declarations for Property Damage Liability Uninsured Motorists Coverage applicable to the "your covered auto" that "insured" was "occupying" at the time of the accident.

The maximum limit of liability is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

   Copyright, Insurance Services Office, Inc., 1989   PP 04 33 12 89



Liberty
Mutual.

**MEXICO EXTENSION ENDORSEMENT**                    AS 1006 (Ed. 12-89)

The coverage applying to "your covered auto" under Parts A, B and D of this policy also applies to accidents and losses while the automobile is in the Republic of Mexico, but not more than 75 miles from the United States border. This coverage is subject to these additional provisions:

1. The insurance applies only if, at the time of accident or loss, the automobile has not been in the Republic of Mexico more than 10 consecutive days.

2. We have no obligation to defend any suit and the Supplementary Payments provisions of Part A and the Transportation Expense provision of Part D do not apply.

3. In addition to the applicable limit of liability, we will pay (a) expenses you incur for first aid to others at the time of an accident for bodily injury covered by this policy and (b) reasonable expenses, except loss of earnings, you incur at our request.

4. No settlement of any claim or suit will obligate us under this endorsement without our written consent.

5. Except for Medical Payments Coverage, this insurance shall be excess over any other collectible insurance available to you as an insured under a policy applying to the automobile or otherwise. The Medical Payments Coverage shall be excess over any other collectible automobile medical payments insurance.

6. If a loss to "your covered auto" requires repair or replacement while the automobile is in Mexico, the most we will pay is the cost of the repair or replacement at the nearest point in the United States where it can be made.

**WARNING** - If you have an automobile accident in Mexico and don't have insurance written by an insurance company licensed in Mexico, you could spend many hours or days in jail. You should arrange for coverage from a licensed Mexican company to avoid complications and some other penalties possible under the laws of Mexico, including impounding of your car. (Liberty is not licensed to write insurance in Mexico.)

(See below for explanation)

**IMPORTANT**

This endorsement extends **LIMITED COVERAGE**.

Under Mexican law automobile insurance policies written by United States companies are not recognized or considered valid for accidents or losses occurring in Mexico. United States insurance companies are not permitted, directly or through Mexican agents, to assist their policyholders, investigate, settle or defend claims or suits in Mexico.

Notwithstanding the above we have included limited Mexican coverage (limited to 75 miles of the U.S. border and 10 consecutive days in Mexico) in your automobile insurance policy. This extension is made to Liberty policyholders because your U.S. coverage is broader than that extended by Mexican companies and it is possible, under certain conditions, to reimburse you for a loss on your return to the states.

If you are planning a motor trip into Mexico you should contact one of the many agents representing reliable Mexican insurance companies and purchase a short term "Special Automobile Policy for Tourists" to protect you during your stay in that country. You will find these agents in practically every American city or town near the border.


**Liberty Mutual.**

**NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD
EXCLUSION ENDORSEMENT**                                      AS 2228 07 05

**THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY
INCLUDING ANY AND ALL ENDORSEMENTS**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

We **do not** provide coverage for loss, damage, injury, liability, cost or expense, due to or as a
consequence of, whether controlled or uncontrolled or however caused:

   a. Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or
      contamination; and/or

   b. Biological or chemical attack or exposure to biological or chemical agents, or combination of
      such agents, including resulting contamination or pollution.

We **do not** provide coverage for loss, damage, injury, liability, cost or expense arising out of or
aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus or
bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or
byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

© 2005 Liberty Mutual Insurance Group



## AUTOMATIC TERMINATION ENDORSEMENT

AS 1046 (Ed. 12-89)

The AUTOMATIC TERMINATION Provision in Part F of the policy is replaced with the following:

AUTOMATIC TERMINATION. If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.



**Liberty Mutual.** INSURANCE

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

PERSONAL AUTO
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 13 01 12 99

Copyright, Insurance Services Office, Inc.,  1999

Page 1 of 1



**NOTICE TO OTHERS IF CANCELLATION OCCURS**                                  AS 1019 (Ed. 12-89)

**We** will not cancel **Your** Policy or reduce the insurance under any of its coverages until at least
_____10_____ days after we have mailed a written notice of such cancellation or reduction to the
person(s) named below.

**Name and Address***

   * As on file with the Company.

AS 1019 (Ed. 12-89)



## Notice of Membership in Liberty Mutual Holding Company Inc.

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company.  The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations shall participate in the distribution of any dividends declared by us for this Policy.  The amount of such Named Insured's participation is determined by the decision of our Board of Directors in compliance with any laws that apply.

Any provisions in the policy relating to:

1.  Membership in Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company; or

2.  Entitlement to dividends as a member of Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company

are deleted and replaced by the preceding paragraphs.

2340e



Liberty Mutual Insurance
350 E 96th Street
Indianapolis, IN 46240
Telephone: 317-581-6804

September 13, 2016

Zach Weichman
PO Box 7230
London, KY 40742

| | |
|---|---|
| Insured Name: | MITCHELL WOODALL |
| | VIVIAN WOODALL |
| Policy Number: | AO229825114810 |
| Claim Number: | 034189020 |
| Date of Loss: | 8/6/2016 |
| Effective Date: | 4/12/2016 |

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course of its business.

Sincerely,

Luann Mueller
Policy Copy
Support

LM
Enclosures

PL Policy/Dec Request

**Attachment #2**



# Policy Declarations
## A summary of your auto insurance coverage



Thank you for renewing with us.

Your declarations are effective as of 04/12/2016.



### INSURANCE INFORMATION

| | |
|---|---|
| Named Insured: | Mitchell Woodall |
| | Vivian Woodall |
| Policy Number: | AO2-298-251148-10 6 2 |
| Policy Period: | 04/12/2016-04/12/2017 12:01 AM standard time at the address of the Named Insured as stated below. |
| Mailing Address: | 22 Firelizard Ln |
| | Edgewood NM 87015-8022 |

### Vehicles Covered by Your Policy

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2007 | HARL | MOTORCYCLE | 1HD1PR83X7Y954543 |
| 2 | 2015 | HARL | MOTORCYCLE | 1HD1PXN13FB958247 |

### Coverage Details

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the indicated coverage for that vehicle.

### Coverage Information

| Total Annual Policy Premium | $1,128.00 |
|---|---|
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

| COVERAGE | LIMITS | | PREMIUM PER | |
|---|---|---|---|---|
| | | | VEHICLE VEH 1 | VEH 2 |
| A. Liability | | | $285 | $237 |
| Bodily Injury | $ 100,000 | Each Person | Yes | Yes |
| | $ 300,000 | Each Accident | | |
| Property Damage | $ 50,000 | Each Accident | | |
| C. Uninsured Motorists Has Been Rejected | | | | |
| D. Coverage for Damage to Your Auto | | | | |
| Collision | | | $189 | $213 |
| Actual Cash Value Less Deductible Shown | | | | |
| Veh 1 $1000 | Veh 2 $1000 | | | |
| Other Than Collision | | | $102 | $102 |
| Actual Cash Value Less Deductible Shown | | | | |
| Veh 1 $1000 | Veh 2 $1000 | | | |
| Annual Premium Per Vehicle: | | | $576 | $552 |



### ACTION REQUIRED:

Please review and keep for your records.

### QUESTIONS ABOUT YOUR POLICY?

By Phone
For Service:
1-800-225-7014

Liberty Mutual
PO Box 970
Mishawaka, IN 46546

To report a claim
By Phone
1-800-2CLAIMS
(1-800-225-2467)

THIS IS NOT YOUR AUTO INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.

Policy Declarations



## Coverage Information (continued)

| Total Annual Policy Premium | $1,128.00 |
|---|---|
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |



Policy Number:
AO2-298-251148-10 6 2
Declarations effective:
04/12/2016

## Discounts and Benefits

Your discounts and benefits have been applied to your Total Annual Policy Premium.

POLICY DISCOUNTS

- Motorcycle Accident Prevention Course
- Multi-Motorcycle
- TruStage™ Auto and Homeowners Insurance Program
- Multi-Policy

## Additional Information for Vehicles Covered by Your Policy

COST NEW VALUE

VEH 1: $26,000
VEH 2: $35,000

CC

VEH 1: 1800 CC'S
VEH 2: 1450 CC'S

## Driver Information

| DRIVER NAME | LICENSE NUMBER | DATE OF BIRTH | STATE |
|---|---|---|---|
| Mitchell F Woodall | 107724257 | 03/03/1959 | NM |

To ensure proper coverage, please contact us to add drivers not listed above.

## Safe Driver Insurance Plan

No Charges Apply - SCO

## Endorsements - Changes to Your Policy

Amendment of Policy Provisions - New Mexico  AS2162  06 07
Automobile Amendatory Endorsement  AS2258  08 06
Amendment of Policy Definitions  AS2344  04 08
Split Liability Limits  PP 03 09 04 86
Mexico Extension Endorsement  AS1006  12 89
New Vehicle Replacement Cost Coverage  AS2112  10 99
Nuclear, Bio-Chemical & Mold Exclusion Endorsement  AS2228  07 05
Automatic Termination Endorsement  AS1046  12 89
Coverage For Damage To Your Auto Exclusion Endorsement  PP 13 01 12 99
Miscellaneous Type Vehicle Endorsement  PP 03 23 06 94
Membership in LMHC Inc.  2340 E



LibertyGuard Auto Policy Declarations provided and underwritten by
Liberty Mutual Fire Insurance Company, Boston, MA.

This policy, including endorsements listed above,
is countersigned by:

_____
Authorized Representative

Policy Number:
AO2-298-251148-10 6 2
Declarations effective:
04/12/2016

_____
President

_____
Secretary

AUTO 3079 10 09



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 300 offices throughout the United States. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**

Liberty Mutual Insurance Group

AUTO 3422 Ed. 6-94 R1

**LIBERTYGUARD AUTO POLICY**

**QUICK REFERENCE**

**DECLARATIONS PAGE**

Your Name and Address
Your Auto or Trailer
Policy Period
Coverages and Amounts of Insurance

**Liberty Mutual.**
**INSURANCE**

|  | Beginning On Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |

**PART A - LIABILITY COVERAGE**

| | |
|---|---|
| Insuring Agreement | 2 |
| Supplementary Payments | 2 |
| Exclusions | 2 |
| Limit of Liability | 3 |
| Out of State Coverage | 3 |
| Financial Responsibility | 4 |
| Other Insurance | 4 |

**PART B - MEDICAL PAYMENTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 4 |
| Exclusions | 4 |
| Limit of Liability | 4 |
| Other Insurance | 5 |

**PART C - UNINSURED MOTORISTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 5 |
| Exclusions | 5 |
| Limit of Liability | 6 |
| Other Insurance | 6 |
| Arbitration | 6 |

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

| | |
|---|---|
| Insuring Agreement | 7 |
| Transportation Expenses | 7 |
| Exclusions | 8 |
| Limit of Liability | 9 |
| Payment of Loss | 9 |
| No Benefit to Bailee | 9 |
| Other Sources of Recovery | 9 |
| Appraisal | 9 |

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS** ............... 10

**PART F - GENERAL PROVISIONS**

| | |
|---|---|
| Bankruptcy | 10 |
| Changes | 10 |
| Fraud | 10 |
| Legal Action Against Us | 10 |
| Our Right To Recover Payment | 11 |
| Policy Period And Territory | 11 |
| Termination | 11 |
| Transfer Of Your Interest In This Policy | 12 |
| Two Or More Auto Policies | 12 |

**\*MUTUAL POLICY CONDITIONS** ............................ 12

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



## AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

  1. The "named insured" shown in the Declarations; and

  2. The spouse if a resident of the same household.

**B.** "We," "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

  1. Under a written agreement to that person; and

  2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means in, upon, getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

  1. Private passenger auto; or

  2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

**J.** "Your covered auto" means:

  1. Any vehicle shown in the Declarations.

  2. Any of the following types of vehicles on the date you become the owner:

  a. a private passenger auto; or

  b. a pickup or van that:

  (1) has a Gross Vehicle Weight of less than 10,000 lbs.; and

  (2) is not used for the delivery or transportation of goods and materials unless such use is:

  (a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

  (b) for farming or ranching.

This provision (J.2.) applies only if:

  a. you acquire the vehicle during the policy period;

  b. you ask us to insure it within 30 days after you become the owner; and

  c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

  3. Any "trailer" you own.

  4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

  a. breakdown;    d. loss; or

  b. repair;    e. destruction.

  c. servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.



## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.  Damages include pre-judgment interest awarded against the "insured."  We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.  We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."
2. Any person using "your covered auto."
3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.
2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.
3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.
4. Up to $50 a day for loss of earnings, but not other income, because of

attendance at hearings or trials at our request.
5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

**A.** We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage."
2. For "property damage" to property owned or being transported by that "insured."
3. For "property damage" to property:
   a. rented to;
   b. used by; or
   c. in the care of;
   that "insured."
   This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.
4. For "bodily injury" to an employee of that "insured" during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.
5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.
6. While employed or otherwise engaged in the "business" of:
   a. selling;          d. storing; or
   b. repairing;        e. parking;
   c. servicing;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:
   a. you;
   b. any "family member;" or
   c. any partner, agent or employee of you or any "family member."
7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in exclusion A.6.
   This exclusion (A.7.) does not apply to



the maintenance or use of a:

a. Private passenger auto;

b. Pickup or van that:

(1) You own; or

(2) You do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

a. breakdown;     d. loss; or
b. repair;     e. destruction; or
c. servicing;

c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

9. For "bodily injury" or "property damage" for which that "insured:"

a. is an insured under a nuclear energy liability policy; or

b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. American Nuclear Insurers;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

a. Has fewer than four wheels; or

b. Is designed mainly for use off public roads.

This exclusion (B.1.) does not apply:

a. While such vehicle is being used by an "insured" in a medical emergency; or

b. To any "trailer."

2. Any vehicle, other than "your covered auto," which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (B.3.) does not apply to you while you are maintaining or

"occupying" any vehicle which is:

a. owned by a "family member;" or

b. furnished or available for the regular use of a "family member."

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.



**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and

2. Sustained by an "insured."

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

1. You or any "family member:"

   a. while "occupying;" or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

### EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by you; or

   b. furnished or available for your regular use.

6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by any "family member;" or

   b. furnished or available for the regular use of any "family member."

   However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. discharge of a nuclear weapon (even if accidental);

   b. war (declared or undeclared);

   c. civil war;

   d. insurrection; or

   e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

    a. competing in; or

    b. practicing or preparing for;

    any prearranged or organized racing or speed contest.

### LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"



2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

1. Sustained by an "insured;" and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

a. you or any "family member;"

b. a vehicle which you or any "family member" are "occupying;" or

c. "your covered auto."

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. denies coverage; or

b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying," or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured:"

1. If that "insured" or the legal



representative settles the "bodily injury" claim without our consent.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured;"

from the owner or operator of an "uninsured motor vehicle," then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the



minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision," only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provide d for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail. Water or flood;
7. Malicious mischief or vandalism
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

**C.** "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

### TRANSPORTATION EXPENSES

In addition, we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Temporary transportation expenses incurred by you in the event of a loss to "your covered auto." We will pay for such expenses if the loss is caused by:
   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto." We will pay for loss of use expenses if the loss is caused by:
   a. Other than "collision" only if the Delcarations indicate that Other Than Collision Coverage is provided for any "your covered auto."
   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto."

If the loss is caused by a total theft of "your covered auto" or a "non-owned auto," we will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

If the loss is caused by other than theft of a "your covered auto" or a "non-owned auto," we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto."



## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. discharge of any nuclear weapon (even if accidental);

   c. war (declared or undeclared);

   d. civil war;

   e. insurrection; or

   f. rebellion or revolution.

4. Loss to:

   a. Any electronic equipment designed for the reproduction of sound, including, but not limited to:

      (1) radios and stereos;

      (2) tape decks; or

      (3) compact disc players;

   b. Any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

      (1) citizens band radios;

      (2) telephones;

      (3) two-way mobile radios;

      (4) scanning monitor receivers;

      (5) television monitor receivers;

      (6) video cassette recorders;

      (7) audio cassette recorders; or

      (8) personal computers;

   c. tapes, records, discs, or other media used with equipment described in a. or b.; or

   d. any other accessories used with equipment described in a. or b.

   This exclusion (4.) does not apply to:

   a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

      (1) The equipment is permanently installed in "your covered auto" or any "non-owned auto;" or

      (2) The equipment is:

         (a) Removable from a housing unit which is permanently installed in the auto;

         (b) Designed to be solely operated by use of the power from the auto's electrical system; and

         (c) In or upon "your covered auto" or any "non-owned auto;"

         at the time of the loss.

   b. any other electronic equipment that is:

      (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

      (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

5. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

   a. acquire during the policy period; and

   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

   a. awnings or cabanas; or

   b. equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or location of radar or laser.



10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   a. special carpeting and insulation, furniture or bars;

   b. facilities for cooking and sleeping;

   c. height-extending roofs; or

   d. custom murals, paintings or other decals or graphics.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. selling;          d. storing; or

   b. repairing;        e. parking;

   c. servicing;

   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

13. Loss to "your covered auto" or any "non-owned auto," located inside a facility designed for racing, for the purpose of:

   a. competing in; or

   b. practicing or preparing for;

   any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

   a. you; or

   b. any "family member;"

   if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member," pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

   1. Actual cash value of the stolen or damaged property;

   2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a trailer is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

   1. You; or

   2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

   1. Any coverage provided by the owner of the "non-owned auto;"

   2. Any other applicable physical damage insurance;

   3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:



1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

**B.** We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:
   a. to physical exams by physicians we select. We will pay for these exams.
   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:
   a. medical reports; and

b. other pertinent records.

5. Submit a proof of loss when required by us.

**C.** A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

**BANKRUPTCY**

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

**CHANGES**

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium

adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

**FRAUD**

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

**LEGAL ACTION AGAINST US**

**A.** No legal action may be brought against us until there has been full compliance with all



the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. returning this policy to us; or

b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

a. at least 10 days notice:

(1) if cancellation is for nonpayment of premium; or

(2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

b. at least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

a. for nonpayment of premium; or

b. if your driver's license or that of:

(1) any driver who lives with you; or

(2) any driver who customarily uses "your covered auto;"

has been suspended or revoked. This must have occurred:

(1) during the policy period; or

(2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

c. if the policy was obtained through material misrepresentation.

B. **Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

C. **Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by


**Liberty Mutual.**
INSURANCE

this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto."

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

PRESIDENT

SECRETARY

Includes Copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**AMENDMENT OF POLICY PROVISIONS - NEW MEXICO**

AS 2162 06 07
(PP 01 96 06 94)

I. **Part A - Liability Coverage**
  A. Paragraph **A.** of the **Insuring Agreement** is replaced by the following:
    A. We will pay damages, other than punitive or exemplary damages, for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.
  B. Exclusion **A.3.** is replaced by the following:
    We do not provide Liability Coverage for any "insured":
    3. For "property damage" to property:
      a. Rented to;
      b. Used by; or
      c. In the care of;
      that "insured":
    This Exclusion **(A.3.)** does not apply to "property damage" to a:
    a. Residence or private garage; or
    b. Vehicle you do not own if:
      (1) A licensed automobile dealer provides the vehicle without charge to you or a "family member":
        (a) For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;
        (b) To demonstrate the vehicle; or
        (c) As a promotional or courtesy vehicle; or
      (2) A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or without charge, to you or a

"family member":
      (a) For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;
      (b) To demonstrate the vehicle; or
      (c) As a promotional or courtesy vehicle; and
    The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:
      **PRIMARY LIABILITY ASSIGN-MENT**
      In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.
  C. The **Other Insurance** Provision is replaced by the following:
    **OTHER INSURANCE**
    If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
    However, we will provide primary insurance for a vehicle you do not own if:
    1. A licensed automobile dealer provides the vehicle without charge to you or a "family member":
      a. For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;
      b. To demonstrate the vehicle; or
      c. As a promotional or courtesy vehicle; or
    2. A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or



without charge, to you or a "family member":

**a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

**b.** To demonstrate the vehicle; or

**c.** As a promotional or courtesy vehicle; and

The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:

> **PRIMARY LIABILITY ASSIGN-MENT**
> In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

**II. Part D - Coverage For Damage To Your Auto**

Paragraph **C.** of the **Insuring Agreement** is replaced by the following:

"Non-owned auto" means:

**1.** Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

**2.** Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

However, "non-owned auto" does not include any vehicle you do not own if:

**1.** A licensed automobile dealer provides the vehicle without charge to you or a "family member":

**a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

**b.** To demonstrate the vehicle; or

**c.** As a promotional or courtesy vehicle; or

**2.** A licensed automobile dealer provides the vehicle for a charge, or someone other than a licensed automobile dealer provides the vehicle with or without charge, to you or a "family member":

**a.** For use as a temporary substitute while "your covered auto" is out of normal use because of its breakdown, repair or servicing;

**b.** To demonstrate the vehicle; or

**c.** As a promotional or courtesy vehicle; and

The vehicle is provided under a written statement, signed by you or a "family member", which contains the following language:

> **PRIMARY LIABILITY ASSIGNMENT**
> In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

**III. PART F - GENERAL PROVISIONS**

Part **F** is amended as follows:

**A.** The Termination provision is amended as follows:

**TERMINATION**

The Nonrenewal section is replaced by the following:

**Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is less than 6 months, we will have the right not to renew or continue every 6 months, beginning 6 months from its original effective date.

**B.** The following is added to the Two Or More Auto Policies provision:

**TWO OR MORE AUTO POLICIES**

**1.** This provision does not apply to Uninsured Motorists Coverage.

**2.** No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1993



**Liberty Mutual.**
INSURANCE

## AUTOMOBILE AMENDATORY ENDORSEMENT

AS 2258 08 06

### I. DEFINITIONS

The **Definitions** section is revised as follows:

**A.** The definition of **Your Covered Auto** is replaced with the following:

"**Your Covered Auto**" means:

1. Any vehicle shown in the Declarations.
2. A **newly acquired auto**.
3. Any **trailer** you own.
4. Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.

This provision **(4.)** does not apply to Coverage For Damage To Your Auto.

**B.** The definition of **Newly Acquired Auto** is added as follows:

"**Newly acquired auto**":

1. **Newly acquired auto** means any of the following types of vehicles you become the owner of during the policy period:
   a. A private passenger auto; or
   b. A pickup or van, for which no other insurance policy provides coverage, that:
      (1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and
      (2) Is not used for the delivery or transportation of goods and materials unless such use is:
         (a) Incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or
         (b) For farming or ranching.

   For this definition to apply to a **newly acquired auto**, which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

2. Coverage for a **newly acquired auto** is provided as described below. If you ask us to insure a **newly acquired auto** after a specified time period described below has elapsed, any coverage we provide for a **newly acquired auto** will begin at the time you request the coverage.

**a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a **newly acquired auto** will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

However, for this coverage to apply to a **newly acquired auto** that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

If a **newly acquired auto** replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

**b.** Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

   (1) 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

   (2) Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, a Collision deductible of $500 will apply.

**c.** Other Than Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

   (1) 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage



we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto,** an Other Than Collision deductible of $500 will apply.

C. **"necessary medical"** - when applied to services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means services or supplies provided by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are:

1. Required to identify or treat an injury caused by an accident covered by this policy;
2. Consistent with symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;
3. Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;
4. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;
5. Not primarily for the convenience of the covered person, or his or her physician, hospital, or other health care provider;
6. The most appropriate supply or level of service that can be safely provided to the covered person; and
7. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment;

However, necessary medical services do not include expenses for any of the following:

1. Nutritional supplements or over-the-counter drugs;
2. Experimental services or a supply, which means services or supplies that we determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed.
3. In patient services or supplies provided to the covered person when these could safely have been provided to the covered person as an outpatient.

D. **"reasonable expenses"** - when applied to medical services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means the least of:

1. The actual charge;
2. The charge negotiated with a provider; or
3. The charge determined by us based on a methodology using a database designed to reflect amounts charged by providers of medical services or supplies within the same or similar geographic region in which you receive your medical services or supplies. The database will reflect (a) service charge data regardless of the provider's specialty and (b) in the case of new procedures, services or supplies, or existing procedures, services or supplies for which there is little or no charge data, a comparison to commonly used procedures, services or supplies.

II. **PART A - LIABILITY COVERAGE**
Exclusion **4.** is under paragraph **B.** of the Exclusions section of **Part A** is replaced by the following:

4. Any vehicle, while being used for:
   **a.** competing in; or
   **b.** practicing or preparing for
   any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

III. **PART B - MEDICAL PAYMENTS COVERAGE**
Exclusion **11.** is under the Exclusions section of **Part B** is replaced by the following:

11. Sustained while **occupying** any vehicle while being used for:
    **a.** competing in; or
    **b.** practicing or preparing for
    any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

IV. **PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**
   A. Paragraph **A.** of the **Insuring Agreement** of Part D is replaced by the following:
   **INSURING AGREEMENT**
   **A.** We will pay for direct and accidental loss to **your covered auto** or any



**non-owned auto,** including their equipment, subject to **Customized Equipment Coverage,** minus any applicable deductible shown in the Declarations. If loss to more than one **your covered auto** or **non-owned auto** results from the same collision, only the highest applicable deductible will apply. We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto** we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

B. The following **Customized Equipment Coverage** provision is added under **Part D:**

**CUSTOMIZED EQUIPMENT COVERAGE**

A. We will pay up to $500 for theft or damage to **customized equipment** if the loss is caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a **non-owned auto** keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for **your covered auto** or any **non-owned auto.**

B. "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

1. are permanently installed or attached by bolts or brackets;
2. are removable from a housing unit that is permanently installed inside the auto;
3. are permanently bonded to the vehicle by an adhesive or welding procedure; or
4. change the appearance or

performance of the vehicle including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered **customized equipment.**

This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered **customized equipment.**

C. If you have purchased additional coverage for **customized equipment** we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

D. The most we will pay for parts, equipment and accessories that are:

a. not installed by the auto manufacturer or dealer and
b. permanently installed in or upon the auto

is the actual cash value of the vehicle not including such parts, equipment and accessories.

C. The **Transportation Expenses** provision of **Part D** is replaced by the following:

**TRANSPORTATION EXPENSES**

In addition, we will pay up to $15 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies in the event of a loss to **your covered auto** if the loss is caused by:



a. Other than collision only if the Declarations indicate Other Than Collision Coverage is provided for that auto.

b. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

If the loss is caused by a total theft of your covered auto, we will pay only transportation expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when your covered auto is returned to use or we pay for its loss.

D. Exclusion 4. is replaced by the following:

4. We will not pay for loss to equipment that is not permanently installed in or upon your covered auto or any non-owned auto. This consists of any equipment that is either designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

a. radios and stereos;

b. tape decks;

c. compact disc players and burners;

d. digital video disc (DVD) players and burners;

e. citizens band radios;

f. scanning monitor receivers;

g. television monitor receivers;

h. global positioning system (GPS) receivers and/or components;

i. video cassette players and recorders;

j. audio cassette recorders; or

k. personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

E. Exclusion 13. is replaced by the following:

13. Loss to your covered auto or any non-owned auto while the car is being used for:

a. competing in; or

b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

F. Exclusion 15. is added as follows:

15. We will not pay for loss to customized equipment in excess of

what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

G. Exclusion 16. is added as follows:

16. We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

H. Paragraph B of the **Limit of Liability** provision of **Part D** is added as follows:

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any **customized equipment.**

V. **PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

Part E is amended as follows:

A. Paragraph **B.** of **Part E** is replaced by the following:

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require, within 30 days of our request:

a. To physical and mental exams by physicians we select under terms we require. We will pay for these exams.

b. To interviews and recorded statements without the need for us to conduct an examination under oath.

c. To examination under oath and subscribe the same.

4. Authorize us to obtain, within 30 days of our request:

a. Medical reports; and

b. Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.



AS 2258 08 06

5. Submit a proof of loss when required by us within 30 days of our request.

### VI. PART F - GENERAL PROVISIONS

**Part F** is amended as follows:

A. The **Fraud** provision is replaced by the following:

**FRAUD**

This policy will not provide coverage under any part of this policy for any insured or any other person or entity seeking benefits under this policy (whether before or after a loss) who:

a. conceals or misrepresents any material fact or circumstance,
b. makes false statements or
c. engages in fraudulent conduct,

any of which relate to a loss, an accident, this insurance or the application for this policy.

Includes some copyrighted material of Insurance Services Office, Inc., with its permission.



# AMENDMENT OF POLICY DEFINITIONS

**THIS ENDORSEMENT CHANGES YOUR POLICY.  IT REPLACES ALL OTHER REFERENCES TO THE SAME SECTIONS OF THE POLICY.**

The following is added to item **A.** under the policy **DEFINITIONS:**

3. the partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

The above, only applies if the civil union or partnership was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

1. The end of 90 days following the change of residency;

2. The effective date of another policy listing the spouse or partner defined above as a named insured; or

3. The end of the policy period.

Paragraph **A.** of the **TRANSFER OF YOUR INTEREST IN THIS POLICY** is deleted. It is replaced with the following:

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

1. the surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death.  Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the declarations; and

2. the legal representative of the deceased person as if a named insured shown in the Declarations.  This applies only with regard to the representative's legal responsibility to maintain or use "your covered auto".

Section 1. only applies if the union or partnership is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

All other terms and conditions of this policy remain the same.



**Liberty Mutual.**
INSURANCE

**SPLIT LIABILITY LIMITS**                                        PP 03 09 04 86

SCHEDULE

| | | |
|---|---|---|
| **Bodily Injury Liability** | $ _____ | each person |
| | $ _____ | each accident |
| **Property Damage Liability** | $ _____ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident.  Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.  The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

          Copyright, Insurance Services Office, Inc., 1985



**MEXICO EXTENSION ENDORSEMENT**                    AS 1006 (Ed. 12-89)

The coverage applying to "your covered auto" under Parts A, B and D of this policy also applies to accidents and losses while the automobile is in the Republic of Mexico, but not more than 75 miles from the United States border.  This coverage is subject to these additional provisions:

1.  The insurance applies only if, at the time of accident or loss, the automobile has not been in the Republic of Mexico more than 10 consecutive days.

2.  We have no obligation to defend any suit and the Supplementary Payments provisions of Part A and the Transportation Expense provision of Part D do not apply.

3.  In addition to the applicable limit of liability, we will pay (a) expenses you incur for first aid to others at the time of an accident for bodily injury covered by this policy and (b) reasonable expenses, except loss of earnings, you incur at our request.

4.  No settlement of any claim or suit will obligate us under this endorsement without our written consent.

5.  Except for Medical Payments Coverage, this insurance shall be excess over any other collectible insurance available to you as an insured under a policy applying to the automobile or otherwise. The Medical Payments Coverage shall be excess over any other collectible automobile medical payments insurance.

6.  If a loss to "your covered auto" requires repair or replacement while the automobile is in Mexico, the most we will pay is the cost of the repair or replacement at the nearest point in the United States where it can be made.

**WARNING** - If you have an automobile accident in Mexico and don't have insurance written by an insurance company licensed in Mexico, you could spend many hours or days in jail.  You should arrange for coverage from a licensed Mexican company to avoid complications and some other penalties possible under the laws of Mexico, including impounding of your car.  (Liberty is not licensed to write insurance in Mexico.)

(See below for explanation)

**IMPORTANT**

This endorsement extends **LIMITED COVERAGE**.

Under Mexican law automobile insurance policies written by United States companies are not recognized or considered valid for accidents or losses occurring in Mexico.  United States insurance companies are not permitted, directly or through Mexican agents, to assist their policyholders, investigate, settle or defend claims or suits in Mexico.

Notwithstanding the above we have included limited Mexican coverage (limited to 75 miles of the U.S. border and 10 consecutive days in Mexico) in your automobile insurance policy.  This extension is made to Liberty policyholders because your U.S. coverage is broader than that extended by Mexican companies and it is possible, under certain conditions, to reimburse you for a loss on your return to the states.

If you are planning a motor trip into Mexico you should contact one of the many agents representing reliable Mexican insurance companies and purchase a short term "Special Automobile Policy for Tourists" to protect you during your stay in that country.  You will find these agents in practically every American city or town near the border.


**Liberty Mutual.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## NEW VEHICLE REPLACEMENT COST COVERAGE

PERSONAL AUTO
AS 2112 10 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

In the event of a covered total loss to a new *"your covered auto" shown in the Declarations for which a specific premium charge indicates that "Collision" Coverage and/or Other Than Collision Coverage applies, the "covered auto" will be replaced at the Actual Cash Value (less any applicable deductible) without adjustments for depreciation that is referenced in the Limit of Liability B. Section of **Part D** of the policy.

* A new vehicle as used in this endorsement is one that has not been previously titled under the motor vehicle laws of any state.

Replacement Cost for a total loss on a new "your covered auto" applies as follows:

a.  total loss must occur during the first 12 months of insurance  coverage, and

b.  within the vehicle's first 15,000 miles,

whichever occurs first, we will pay, at our option, the full cost of repair or replacement, less the applicable deductible.

This does not apply to a substitute automobile, a non-owned automobile or a vehicle leased under a long-term contract of 6 months or longer.

The following conditions apply:

1.  Our liability for any loss will not be more than the cost to replace the damaged property with:

a.  a previously untitled vehicle of the year, make, model and equipment of the damaged automobile or, if unavailable

b.  a vehicle that is most similar in class and body type to the year, make, model and equipment of the damaged automobile.

2.  We will not pay for any loss before the actual repair or replacement is completed.

3.  We have the right to pay the loss in money or to repair or replace the damaged automobile.

For purposes of this endorsement, Total Loss means a loss in which the cost to replace or repair the vehicle to its pre-loss condition plus salvage value, equals or exceeds the actual cost value.



**NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD**
**EXCLUSION ENDORSEMENT**                                    AS 2228 07 05

**THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY INCLUDING ANY AND ALL ENDORSEMENTS**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

We **do not** provide coverage for loss, damage, injury, liability, cost or expense, due to or as a consequence of, whether controlled or uncontrolled or however caused:

    a. Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or contamination; and/or

    b. Biological or chemical attack or exposure to biological or chemical agents, or combination of such agents, including resulting contamination or pollution.

We **do not** provide coverage for loss, damage, injury, liability, cost or expense arising out of or aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

© 2005 Liberty Mutual Insurance Group



## AUTOMATIC TERMINATION ENDORSEMENT

AS 1046 (Ed. 12-89)

The AUTOMATIC TERMINATION Provision in Part F of the policy is replaced with the following:

AUTOMATIC TERMINATION.  If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

PERSONAL AUTO
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

POLICY NUMBER:



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MISCELLANEOUS TYPE VEHICLE ENDORSEMENT

PERSONAL AUTO
PP 03 23 06 94

### SCHEDULE

| Description and Type of Vehicle | Passenger Hazard Excluded | |
|---|---|---|
| 1. | Yes ☐ | No ☐ |
| 2. | Yes ☐ | No ☐ |
| 3. | Yes ☐ | No ☐ |

Coverage is provided where a premium and a limit of liability is shown for the coverage.

| Coverages | Limit Of Liability | | Premium Veh. 1 | Veh. 2 | Veh. 3 |
|---|---|---|---|---|---|
| Liability | $ | Each Accident | $ | | |
| | $ | Each Accident | | $ | |
| | $ | Each Accident | | | $ |
| Medical Payments | $ | Each Person | $ | | |
| | $ | Each Person | | $ | |
| | $ | Each Person | | | $ |
| Uninsured Motorists | $ | Each Accident | $ | | |
| | $ | Each Accident | | $ | |
| | $ | Each Accident | | | $ |
| Collision | $ Less $ Ded. | | $ | | |
| | $ Less $ Ded. | | | $ | |
| | $ Less $ Ded. | | | | $ |
| Other Than Collision | $ Less $ Ded. | | $ | | |
| | $ Less $ Ded. | | | $ | |
| | $ Less $ Ded. | | | | $ |
| | Total Premium | | $ | | |

**NOTICE**
**For the Collision and Other Than Collision Coverages, the amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of loss or damage for the described property.  PLEASE refer to the Limit of Liability provision below.**

With respect to the "miscellaneous type vehicles" and coverages described in the Schedule or in the Declarations, the provisions of the policy apply unless modified by this endorsement.

### I. DEFINITIONS

The Definitions Section is amended as follows:

**A.** For the purpose of the coverage provided by this endorsement "miscellaneous type vehicle" means a motor home, motorcycle or other similar type vehicle, all-terrain vehicle, dune buggy or golf cart.

**B.** The definition of "your covered auto" is replaced by the following:

"Your covered auto" means:

**1.** Any "miscellaneous type vehicle" shown in the Schedule or in the Declarations.

**2.** Any of the following types of vehicles on the date you become the owner:

**a.** a private passenger auto;

**b.** a pickup or van that:

**(1)** Has a Gross Vehicle Weight of less than 10,000 lbs.; and

**(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

**(a)** Incidental to your "business" of maintaining or repairing furnishings or equipment; or

Copyright, Insurance Services Office, Inc., 1993



**(b)** For farming or ranching.

**c.** any "miscellaneous type vehicle" of the same type shown in the Schedule or in the Declarations.

This provision applies only if:

**a.** You acquire the vehicle during the policy period;

**b.** You ask us to insure it within 30 days after you become the owner; and

**c.** With respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one of the same type shown in the Schedule or in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any of the same type shown in the Schedule or in the Declarations, it will have the broadest coverage we now provide for any vehicle of that type shown in the Schedule or in the Declarations.

**3.** Any "trailer".

**4.** Any "miscellaneous type vehicle" or auto you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

This provision **(4.)** does not apply to Coverage for Damage to Your Auto.

## II. PART A - LIABILITY COVERAGE

Part **A** is amended as follows:

**A.** The definition of "insured" is replaced by the following:

"Insured" means:

**1.** You or any "family member" for the ownership, maintenance or use of "your covered auto".

**2.** Any person using "your covered auto".

**3.** For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

**B.** The Exclusions Section is amended as follows:

**1.** Exclusion **B.1.** is replaced by the following:

We do not provide Liability Coverage for the ownership, maintenance or use of any vehicle which:

**a.** Has fewer than four wheels; or

**b.** Is designed mainly for use off public roads.

This exclusion **(B.1.)** does not apply:

**a.** While such vehicle is being used by an "insured" in a medical emergency; or

**b.** To any "trailer"; or

**c.** To a vehicle having fewer than four wheels if it is insured for Liability Coverage under this endorsement.

**2.** The following exclusion applies under Section **A** to any vehicle for which the Schedule or Declarations indicates that the passenger hazard is excluded:

We do not provide Liability Coverage for any "insured" for "bodily injury" to any "insured" while "occupying" the described "miscellaneous type vehicle".

## III. PART B - MEDICAL PAYMENTS COVERAGE

Exclusion **1.** of Part **B** is replaced by the following:

We do not provide Medical Payments Coverage for any "insured" for "bodily injury" sustained while "occupying" any motorized vehicle having fewer than four wheels. However, this exclusion (1.) does not apply to a motorized vehicle having fewer than four wheels if it is insured for Medical Payments Coverage under this endorsement.

Copyright, Insurance Services Office, Inc., 1993



## IV. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

Part **D** is amended as follows:

**A.** The following is added to the definition of "non-owned auto":

   **3.** Any motor home, motorcycle or other similar type vehicle, all-terrain vehicle, dune buggy or golf cart you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

     **a.** Breakdown;   **d.** Loss; or
     **b.** Repair;     **e.** Destruction.
     **c.** Servicing;

**B.** With respect to the Coverage(s) shown as applicable to a vehicle described in the Schedule or in the Declarations, the Limit of Liability provision is replaced by the following:

### LIMIT OF LIABILITY

**A.** Our limit of liability for loss will be the lesser of the:

   **1.** Amount shown in the Schedule or in the Declarations;

   **2.** Actual cash value of the stolen or damaged property; or

   **3.** Amount necessary to repair or replace the property with other property of like kind and quality.

Our payment for loss will be reduced by any applicable deductible shown in the Schedule or in the Declarations. If loss to more than one "your covered auto" results from the same "collision", only the highest applicable deductible will apply.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**C.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.





## Notice of Membership in Liberty Mutual Holding Company Inc.

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations shall participate in the distribution of any dividends declared by us for this Policy. The amount of such Named Insured's participation is determined by the decision of our Board of Directors in compliance with any laws that apply.

Any provisions in the policy relating to:

1.  Membership in Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company; or

2.  Entitlement to dividends as a member of Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company

are deleted and replaced by the preceding paragraphs.

2340e

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

MITCHELL WOODALL,

        Plaintiff,

vs.                           No. D-101-CV-2017-01727

LIBERTY MUTUAL GROUP, INC.,
d/b/a LIBERTY MUTUAL INSURANCE,

        Defendant.

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LIBERTY MUTUAL GROUP INC d/b/a LIBERTY MUTUAL INSURANCE

COMES NOW Plaintiff Mitchell Woodall, by and through his attorney Will Ferguson & Associates (Robert C. Gutierrez), and pursuant to the New Mexico Rules of Civil Procedure and particularly Rule 1-033 NMRA and Rule 1-034 NMRA, and propounds his first set of interrogatories and requests for production to Defendant Liberty Mutual Group, Inc. d/b/a Liberty Mutual Insurance, to be answered within forty-five (45) days from the date of service with the corresponding summons and complaint being served concurrently herewith. Through out this discovery pleading, the Defendant Liberty Mutual Group, Inc. d/b/a Liberty Mutual Insurance maybe referred to as Liberty Mutual.

## INTERROGATORIES

**INTERROGATORY NO. 1.** For each person answering these Interrogatories on behalf of Liberty Mutual, please state the person's name, current address and position with (or relationship to) Liberty Mutual. If more than one person answers or assists in answering these Interrogatories, please identify each person, giving the person's name, address and position with (or relationship to) Liberty

Mutual. In addition, identify in your answers when that person has provided assistance and what assistance or information that person supplied.

**ANSWER:**



**INTERROGATORY NO. 2.** Did Liberty Mutual provide insurance coverage to Plaintiff Mitchell Woodall which is triggered by the crash that is more fully described in Plaintiff's Complaint? If so, please fully describe the policy or policies and all coverages that are triggered by this accident.

**ANSWER:**



**INTERROGATORY NO. 3.**   Is Liberty Mutual presenting any defenses that would prohibit, limit, prevent or otherwise curtail any coverages that would otherwise be available under the policy or policies of insurance that are triggered by the subject crash? If so, please fully describe each and every such policy or coverage defense, including but not limited to a precise representation of the policy language upon which you rely for each such defense.

**ANSWER:**

**INTERROGATORY NO. 4.** Is Defendant Liberty Mutual Group, Inc. d/b/a Liberty Mutual Insurance(herein also Liberty Mutual) being sued in its proper corporate name?  If not, please identify the correct name of the entity, its legal nature (e.g. corporation or partnership) state of organization/incorporation and its principal place of business.

**ANSWER:**

**INTERROGATORY NO. 5.** If you maintain that Liberty Mutual is not a proper defendant in this lawsuit, please explain in detail the reason(s) you believe Liberty Mutual is not a proper defendant.

**ANSWER:**

**INTERROGATORY NO. 6.**  Please list the names, addresses and telephone numbers or each person believe or known by you, your agents, or your attorneys, to have any knowledge concerning the August 6th, 2016 motor vehicle crash as described in Plaintiff's Complaint, or any of the issues raised in the Complaint and specify the area in which each person has knowledge.

**ANSWER:**

3

**INTERROGATORY NO. 7.**  If you intend to call any law witnesses at trial, state their names, addresses, telephone numbers and the expected substance of their testimony.

**ANSWER:**

**INTERROGATORY NO. 8.**  Have you, your attorneys or any persons acting on your behalf, obtained statements from anyone concerning any matter pertaining to the incident or any issues in this lawsuit?  If yes, please state the name and address of each person giving a statement; the name and address of the person(s) taking the statement; whether the statement was written, oral or recorded; the date and location at which the statement was obtained; and summarize the contents of each statement.

**ANSWER:**

**INTERROGATORY NO. 9.**  List each person you know or believe either heard or purportedly heard any party make any statement, remark or comment concerning the August 6, 2016 motor vehicle crash.  List the name, home address, business address and telephone number of each person and state the substance of each statement, remark or comment attributed to Plaintiff.

**ANSWER:**

4

**INTERROGATORY NO. 10.**  If you contend that Plaintiff committed any act or omission that contributed to causing the accident that is the subject of this complaint, describe in detail any such act or omission.

**ANSWER:**


**INTERROGATORY NO. 11.**  Do you or does anyone acting on your behalf know of any photographs, films, or videotapes depicting any place, object or individual relating to the accident or Plaintiff's injuries?  If yes, identify the number of photographs or feet of film or videotape the places, objects or persons photographed, filmed or videotaped; the date the photographs, films or videtapes were taken; the name, address and telephone number of the individual taking the photographs, films or videotapes; and the name, address and telephone number of each person who has the original or a copy.

**ANSWER:**


**INTERROGATORY NO. 12.**  Give a short summary of the contents of every document or exhibit you intend to use as a basis for your defense or which you intend to offer into evidence at trial.  A Request for Production asking for these documents accompanies this Interrogatory.  If you object to producing any document, describe in detail and recite verbatim the contents of each and every such document and give the date and circumstances for preparation of each document.

**ANSWER:**

5

**INTERROGATORY NO. 13.**  Have you or your attorneys retained any expert witnesses who will or may testify at the trial of this matter regarding the facts and circumstances of the accident?  If yes, please identify the names and addresses of any and all such experts; the date each such expert was consulted; the exact nature of each individual's expertise; all photographs, drawings, sketches, charts and/or physical evidence supplied to each such expert; and provide a brief summary of the facts and opinions to which each expert is expected to testify with the grounds for each opinion.

**ANSWER:**

**INTERROGATORY NO. 14.**  Please describe in detail any other incidents, accidents or claims made by the Plaintiff against any policy of insurance that he held with you either before or after the crash that is the subject of this lawsuit and regardless of whether a claim payment was made by you to Plaintiff. If Liberty Mutual has insured Plaintiff for more than five years, this Interrogatory is limited to the past five years plus all such incident going forward from the date of the subject crash.

**ANSWER:**

**INTERROGATORY NO. 15.**  If you contend that the injuries alleged by Plaintiff to have been caused by the instant motor vehicle crash were in fact caused by some other accident or medical condition, please state, with specificity, which of the injuries alleged by Plaintiff have been caused by the instant automobile crash were in fact caused by some other accident or medical condition.

**ANSWER:**

**INTERROGATORY NO. 16.**  Please identify by name, address, position, immediate supervisor, all individuals who handled, were consulted with, supervised, reviewed or otherwise were responsible for the handling of the claim(s) submitted by Plaintiff pertaining to the subject accident of August 6th, 2016.

**ANSWER:**

7

**INTERROGATORY NO. 17.**  Please state whether an investigation or report has been made by or on behalf of Defendant Liberty Mutual relating to any of the occurrences described in Plaintiff's Complaint and, if so, for each such investigation or report, please state:

      a.     the name, address and job description of the person who conducted the investigation or made the report;

      b.     whether a written report was prepared with regard to the investigation; and

      c.     the name, address and job description of the person who currently has custody or control of any written report or other documentation of the investigation.

**ANSWER:**


**INTERROGATORY NO. 18.**  Please identify each person who, on behalf of Defendant Liberty Mutual, communicated with Plaintiff about his complaints and state whether any notes, memos, or other documents were created as a result of these communications and, if so, please identify each such note, memo or document and state the name and address of the person who has custody of it.

**ANSWER:**

8

**INTERROGATORY NO. 19.** Please state whether Defendant Liberty Mutual utilized, in any manner, any computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim and, if so, please identify:

a.      the computerized evaluation or review system;

b.      each person who reviewed the file for entry into the computerized evaluation or review system;

c.      each person responsible for deciding what types of information were entered or not entered into the computerized evaluation or review system;

d.      each person who entered the data into the computerized evaluation or review system;

e.      each person who reviewed the data processed by the computerized evaluation or review system;

f.      each injury code - such as an International Classification of Diseases (ICD) code - entered into the computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim; and

g.      each Current Procedural Terminology (CPT) code entered into the computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim.

**ANSWER:**

**INTERROGATORY NO. 20.** If Defendant Liberty Mutual utilized in any manner, any computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim, please state whether Defendant Liberty Mutual failed to enter into such system any International Classification of Diseases (ICD) code listed in Plaintiff's medical records and bills and, if so, then please state each such ICD code, the medical provider in whose bills it appears and the reason Defendant Liberty Mutual failed to enter it into the computerized evaluation or review system.

**ANSWER:**

**INTERROGATORY NO. 21.** If Defendant Liberty Mutual utilized, in any manner, any computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim, please state whether Defendant failed to enter into such system any Current Procedural Terminology (CPT) code listed in Plaintiff's medical records and bill and, if so, then please state each such CPT code, the medical provider in whose bills it appears, and the reason Defendant Liberty Mutual failed to enter it into the computerized evaluation or review system.

**ANSWER:**

10

**INTERROGATORY NO. 22.**  Please state whether Defendant Liberty Mutual utilized, in any manner, a computerized medical bill review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim and, if so, please identify:

       a.     the computerized medical bill review system used;

       b.     each person who reviewed the file for entry into the computerized medical bill review system;

       c.     each person responsible for deciding what types of information were entered or not entered into the computerized medical bill review system;

       d.     each person who entered the data into the computerized medical bill review system; and

       e.     each person who reviewed the data processed by the computerized medical bill review system.

**ANSWER:**

11

## REQUEST FOR PRODUCTION

**REQUEST NO. 1.**  Please provide copies of any document that you may or will rely upon to prove any affirmative defense raised in your Answer to Plaintiff's Complaint.

**RESPONSE**:

**REQUEST NO. 2.**  Please provide complete copies of all insurance policies that may provide coverage for this incident and include the declarations page for each policy.

**RESPONSE**:

**REQUEST NO. 3.** Please provide copies of statements of any witnesses to either the subject accident of August 6th, 2016  or Plaintiff's injuries, or any statements of persons having knowledge of the circumstances of the incident.  This request encompasses nay accident reports, statements, whether written, recorded or otherwise taken by you or anyone acting on your behalf, including copies of any statements of Plaintiff.

**RESPONSE**:

12

**REQUEST NO. 4.** Please produce copies of any reports or other materials arising from any investigations performed regarding the incident, including but not limited to reconstructions, calculations and consultations regarding the liability issues.

**RESPONSE:**

**REQUEST NO. 5.** Please provide copies of any surveillance, movies or photographs that have been made of Plaintiff.  This request is ongoing and shall be supplemented pursuant to the New Mexico Rules of Civil procedure.

**RESPONSE**:

**REQUEST NO. 6.**  Please produce copies, including laser color copies, of any photographs, of the complete investigation and/or adjustment of the property damage sustained by Plaintiff, including but not limited to, all collision damage appraisals, all photographs of physical damage, all total loss evaluations, all research regarding any total loss evaluation, and any and all correspondence to Plaintiff regarding the investigation, adjustment, settlement and/or conclusion of his property damage claim.

**RESPONSE**:

13

**REQUEST NO. 7.**  Please provide copies of any photographs, videotapes, or other photographic material of the scene of the crash which is the subject of this lawsuit.

**RESPONSE**:

**REQUEST NO. 8.**  Please provide copies of all documents or tangible things prepared by any expert you may call at trial, including but not limited to, reports, factual observations, opinions, conclusions, photographs, field notes, calculations, models and exhibits.  If a report has not been prepared, the preparation of the report is hereby requested pursuant to the New Mexico Rules of Civil Procedure to comply with the requirements of Rule 1-026B (6)(a) NMRA.

**RESPONSE**:

**REQUEST NO. 9.**  Please produce all documentation related in any manner to any claims or demands submitted on Plaintiff's behalf arising from the subject crash, including but not limited to all medical documentation of Plaintiff's injuries and damages.

**RESPONSE**:

14

**REQUEST NO. 10**: Please provide copies of all exhibits you may or will introduce as an exhibit at trial in this matter.

**RESPONSE:**

**REQUEST NO. 11**: Produce copies of all records and computerized data including documents, notes, emails, correspondence, manuals, screenshots and policies or procedures involving any computerized evaluation or review systems which were utilized to review Plaintiff's underinsured bodily injury claim.

**RESPONSE:**

**REQUEST NO. 12**: Please produce copies of all documents relating to the investigation and/or adjustment of this claim, including but not limited to all correspondence, notes, emails and supporting documents regarding the investigation, adjustment and/or conclusion of Plaintiff's claim.

**RESPONSE:**

**REQUEST NO. 13**: Please produce copies of all documentation related in any manner to any claims, demands, responses, counter-demands, responses and replies regarding Plaintiff's underinsured claim arising from the subject claim.

**RESPONSE:**

**REQUEST NO. 14:** Please produce a complete copy of any claim file maintained by Liberty Mutual with respect to Plaintiff's claim.   This request includes all correspondence from their attorneys, correspondence from attorneys and professionals working on behalf of Liberty Mutual and all electronic notes from the file.

**RESPONSE:**

**REQUEST NO. 15**: Please produce complete copies of any and all claims files for any claim filed by the Plaintiff to or against you or any other entity related to the "Liberty Mutual" corporate group or family of companies at any time during the last five (5) years.

**RESPONSE:**

**REQUEST NO. 16:** Please provide copies of any documents that were used, viewed or relied on in preparing your Answers to Plaintiff's First Set of Interrogatories, if not previously produced in response to other requests herein.

**RESPONSE**:

Respectfully Submitted:

WILL FERGUSON & ASSOCIATES

*/s/ Robert C. Gutierrez*
ROBERT C. GUTIERREZ
*Attorney for Plaintiff*
10090 Coors Blvd NW Ste A
Albuquerque, NM 87114
Telephone:    (505) 243-5566
Telecopier:   (505) 897-2279

17

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

MITCHELL WOODALL,

        Plaintiff,

vs.                                    No. D-101-CV-2017-01727

LIBERTY MUTUAL GROUP, INC.,
d/b/a LIBERTY MUTUAL INSURANCE,

        Defendant.

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LIBERTY MUTUAL GROUP INC d/b/a LIBERTY MUTUAL INSURANCE

COMES NOW Plaintiff Mitchell Woodall, by and through his attorney Will Ferguson & Associates (Robert C. Gutierrez), and pursuant to the New Mexico Rules of Civil Procedure and particularly Rule 1-033 NMRA and Rule 1-034 NMRA, and propounds his first set of interrogatories and requests for production to Defendant Liberty Mutual Group, Inc. d/b/a Liberty Mutual Insurance, to be answered within forty-five (45) days from the date of service with the corresponding summons and complaint being served concurrently herewith. Through out this discovery pleading, the Defendant Liberty Mutual Group, Inc. d/b/a Liberty Mutual Insurance maybe referred to as Liberty Mutual.

### INTERROGATORIES

**INTERROGATORY NO. 1.** For each person answering these Interrogatories on behalf of Liberty Mutual, please state the person's name, current address and position with (or relationship to) Liberty Mutual. If more than one person answers or assists in answering these Interrogatories, please identify each person, giving the person's name, address and position with (or relationship to) Liberty

Mutual.  In addition, identify in your answers when that person has provided assistance and what assistance or information that person supplied.

**ANSWER:**

**INTERROGATORY NO. 2.** Did Liberty Mutual provide insurance coverage to Plaintiff Mitchell Woodall which is triggered by the crash that is more fully described in Plaintiff's Complaint?  If so, please fully describe the policy or policies and all coverages that are triggered by this accident.

**ANSWER:**

**INTERROGATORY NO. 3.**   Is Liberty Mutual presenting any defenses that would prohibit, limit, prevent or otherwise curtail any coverages that would otherwise be available under the policy or policies of insurance that are triggered by the subject crash?  If so, please fully describe each and every such policy or coverage defense, including but not limited to a precise representation of the policy language upon which you rely for each such defense.

**ANSWER:**

**INTERROGATORY NO. 4.** Is Defendant Liberty Mutual Group, Inc. d/b/a Liberty Mutual Insurance(herein also Liberty Mutual) being sued in its proper corporate name?  If not, please identify the correct name of the entity, its legal nature (e.g. corporation or partnership) state of organization/incorporation and its principal place of business.

**ANSWER:**


**INTERROGATORY NO. 5.** If you maintain that Liberty Mutual is not a proper defendant in this lawsuit, please explain in detail the reason(s) you believe Liberty Mutual is not a proper defendant.

**ANSWER:**


**INTERROGATORY NO. 6.**  Please list the names, addresses and telephone numbers or each person believe or known by you, your agents, or your attorneys, to have any knowledge concerning the August 6th, 2016 motor vehicle crash as described in Plaintiff's Complaint, or any of the issues raised in the Complaint and specify the area in which each person has knowledge.

**ANSWER:**

3

**INTERROGATORY NO. 7.**  If you intend to call any law witnesses at trial, state their names, addresses, telephone numbers and the expected substance of their testimony.

**ANSWER:**

**INTERROGATORY NO. 8.**  Have you, your attorneys or any persons acting on your behalf, obtained statements from anyone concerning any matter pertaining to the incident or any issues in this lawsuit?  If yes, please state the name and address of each person giving a statement; the name and address of the person(s) taking the statement; whether the statement was written, oral or recorded; the date and location at which the statement was obtained; and summarize the contents of each statement.

**ANSWER:**

**INTERROGATORY NO. 9.**  List each person you know or believe either heard or purportedly heard any party make any statement, remark or comment concerning the August 6, 2016 motor vehicle crash.  List the name, home address, business address and telephone number of each person and state the substance of each statement, remark or comment attributed to Plaintiff.

**ANSWER:**

4

**INTERROGATORY NO. 10.**  If you contend that Plaintiff committed any act or omission that contributed to causing the accident that is the subject of this complaint, describe in detail any such act or omission.

**ANSWER:**

**INTERROGATORY NO. 11.**  Do you or does anyone acting on your behalf know of any photographs, films, or videotapes depicting any place, object or individual relating to the accident or Plaintiff's injuries?  If yes, identify the number of photographs or feet of film or videotape the places, objects or persons photographed, filmed or videotaped; the date the photographs, films or videtapes were taken; the name, address and telephone number of the individual taking the photographs, films or videotapes; and the name, address and telephone number of each person who has the original or a copy.

**ANSWER:**

**INTERROGATORY NO. 12.**  Give a short summary of the contents of every document or exhibit you intend to use as a basis for your defense or which you intend to offer into evidence at trial.  A Request for Production asking for these documents accompanies this Interrogatory.  If you object to producing any document, describe in detail and recite verbatim the contents of each and every such document and give the date and circumstances for preparation of each document.

**ANSWER:**

5

**INTERROGATORY NO. 13.**  Have you or your attorneys retained any expert witnesses who will or may testify at the trial of this matter regarding the facts and circumstances of the accident?  If yes, please identify the names and addresses of any and all such experts; the date each such expert was consulted; the exact nature of each individual's expertise; all photographs, drawings, sketches, charts and/or physical evidence supplied to each such expert; and provide a brief summary of the facts and opinions to which each expert is expected to testify with the grounds for each opinion.

      **ANSWER:**

**INTERROGATORY NO. 14.**  Please describe in detail any other incidents, accidents or claims made by the Plaintiff against any policy of insurance that he held with you either before or after the crash that is the subject of this lawsuit and regardless of whether a claim payment was made by you to Plaintiff. If Liberty Mutual has insured Plaintiff for more than five years, this Interrogatory is limited to the past five years plus all such incident going forward from the date of the subject crash.

      **ANSWER:**

6

**INTERROGATORY NO. 15.**  If you contend that the injuries alleged by Plaintiff to have been caused by the instant motor vehicle crash were in fact caused by some other accident or medical condition, please state, with specificity, which of the injuries alleged by Plaintiff have been caused by the instant automobile crash were in fact caused by some other accident or medical condition.

**ANSWER:**

**INTERROGATORY NO. 16.**  Please identify by name, address, position, immediate supervisor, all individuals who handled, were consulted with, supervised, reviewed or otherwise were responsible for the handling of the claim(s) submitted by Plaintiff pertaining to the subject accident of August 6th, 2016.

**ANSWER:**

7

**INTERROGATORY NO. 17.**  Please state whether an investigation or report has been made by or on behalf of Defendant Liberty Mutual relating to any of the occurrences described in Plaintiff's Complaint and, if so, for each such investigation or report, please state:

      a.     the name, address and job description of the person who conducted the investigation or made the report;

      b.     whether a written report was prepared with regard to the investigation; and

      c.     the name, address and job description of the person who currently has custody or control of any written report or other documentation of the investigation.

**ANSWER:**

**INTERROGATORY NO. 18.**  Please identify each person who, on behalf of Defendant Liberty Mutual, communicated with Plaintiff about his complaints and state whether any notes, memos, or other documents were created as a result of these communications and, if so, please identify each such note, memo or document and state the name and address of the person who has custody of it.

**ANSWER:**

8

**INTERROGATORY NO. 19.**  Please state whether Defendant Liberty Mutual utilized, in any manner, any computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim and, if so, please identify:

      a.      the computerized evaluation or review system;

      b.      each person who reviewed the file for entry into the computerized evaluation or review system;

      c.      each person responsible for deciding what types of information were entered or not entered into the computerized evaluation or review system;

      d.      each person who entered the data into the computerized evaluation or review system;

      e.      each person who reviewed the data processed by the computerized evaluation or review system;

      f.      each injury code - such as an International Classification of Diseases (ICD) code - entered into the computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim; and

      g.      each Current Procedural Terminology (CPT) code entered into the computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim.

**ANSWER:**

9

**INTERROGATORY NO. 20.**  If Defendant Liberty Mutual utilized in any manner, any computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim, please state whether Defendant Liberty Mutual failed to enter into such system any International Classification of Diseases (ICD) code listed in Plaintiff's medical records and bills and, if so, then please state each such ICD code, the medical provider in whose bills it appears and the reason Defendant Liberty Mutual failed to enter it into the computerized evaluation or review system.

**ANSWER:**

**INTERROGATORY NO. 21.**  If Defendant Liberty Mutual utilized, in any manner, any computerized evaluation or review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim, please state whether Defendant failed to enter into such system any Current Procedural Terminology (CPT) code listed in Plaintiff's medical records and bill and, if so, then please state each such CPT code, the medical provider in whose bills it appears, and the reason Defendant Liberty Mutual failed to enter it into the computerized evaluation or review system.

**ANSWER:**

10

**INTERROGATORY NO. 22.**  Please state whether Defendant Liberty Mutual utilized, in any manner, a computerized medical bill review system to evaluate or review Plaintiff's underinsured motorist bodily injury claim and, if so, please identify:

        a.      the computerized medical bill review system used;

        b.      each person who reviewed the file for entry into the computerized medical bill review system;

        c.      each person responsible for deciding what types of information were entered or not entered into the computerized medical bill review system;

        d.      each person who entered the data into the computerized medical bill review system; and

        e.      each person who reviewed the data processed by the computerized medical bill review system.

**ANSWER:**

## REQUEST FOR PRODUCTION

**REQUEST NO. 1.**  Please provide copies of any document that you may or will rely upon to prove any affirmative defense raised in your Answer to Plaintiff's Complaint.

**RESPONSE**:

**REQUEST NO. 2.**  Please provide complete copies of all insurance policies that may provide coverage for this incident and include the declarations page for each policy.

**RESPONSE**:

**REQUEST NO. 3.**  Please provide copies of statements of any witnesses to either the subject accident of August 6th, 2016  or Plaintiff's injuries, or any statements of persons having knowledge of the circumstances of the incident.  This request encompasses nay accident reports, statements, whether written, recorded or otherwise taken by you or anyone acting on your behalf, including copies of any statements of Plaintiff.

**RESPONSE**:

**REQUEST NO. 4.** Please produce copies of any reports or other materials arising from any investigations performed regarding the incident, including but not limited to reconstructions, calculations and consultations regarding the liability issues.

**RESPONSE:**

**REQUEST NO. 5.** Please provide copies of any surveillance, movies or photographs that have been made of Plaintiff.  This request is ongoing and shall be supplemented pursuant to the New Mexico Rules of Civil procedure.

**RESPONSE**:

**REQUEST NO. 6.**  Please produce copies, including laser color copies, of any photographs, of the complete investigation and/or adjustment of the property damage sustained by Plaintiff, including but not limited to, all collision damage appraisals, all photographs of physical damage, all total loss evaluations, all research regarding any total loss evaluation, and any and all correspondence to Plaintiff regarding the investigation, adjustment, settlement and/or conclusion of his property damage claim.

**RESPONSE**:

13

**REQUEST NO. 7.**   Please provide copies of any photographs, videotapes, or other photographic material of the scene of the crash which is the subject of this lawsuit.

**RESPONSE**:

**REQUEST NO. 8.**   Please provide copies of all documents or tangible things prepared by any expert you may call at trial, including but not limited to, reports, factual observations, opinions, conclusions, photographs, field notes, calculations, models and exhibits.   If a report has not been prepared, the preparation of the report is hereby requested pursuant to the New Mexico Rules of Civil Procedure to comply with the requirements of Rule 1-026B (6)(a) NMRA.

**RESPONSE**:

**REQUEST NO. 9.**   Please produce all documentation related in any manner to any claims or demands submitted on Plaintiff's behalf arising from the subject crash, including but not limited to all medical documentation of Plaintiff's injuries and damages.

**RESPONSE**:

14

**REQUEST NO. 10**: Please provide copies of all exhibits you may or will introduce as an exhibit at trial in this matter.

**RESPONSE:**

**REQUEST NO. 11**: Produce copies of all records and computerized data including documents, notes, emails, correspondence, manuals, screenshots and policies or procedures involving any computerized evaluation or review systems which were utilized to review Plaintiff's underinsured bodily injury claim.

**RESPONSE:**

**REQUEST NO. 12**: Please produce copies of all documents relating to the investigation and/or adjustment of this claim, including but not limited to all correspondence, notes, emails and supporting documents regarding the investigation, adjustment and/or conclusion of Plaintiff's claim.

**RESPONSE:**

**REQUEST NO. 13**: Please produce copies of all documentation related in any manner to any claims, demands, responses, counter-demands, responses and replies regarding Plaintiff's underinsured claim arising from the subject claim.

**RESPONSE:**

**REQUEST NO. 14:** Please produce a complete copy of any claim file maintained by Liberty Mutual with respect to Plaintiff's claim.  This request includes all correspondence from their attorneys, correspondence from attorneys and professionals working on behalf of Liberty Mutual and all electronic notes from the file.

**RESPONSE:**

**REQUEST NO. 15**: Please produce complete copies of any and all claims files for any claim filed by the Plaintiff to or against you or any other entity related to the "Liberty Mutual" corporate group or family of companies at any time during the last five (5) years.

**RESPONSE:**

16

**REQUEST NO. 16:** Please provide copies of any documents that were used, viewed or relied on in preparing your Answers to Plaintiff's First Set of Interrogatories, if not previously produced in response to other requests herein.

**RESPONSE**:

Respectfully Submitted:

WILL FERGUSON & ASSOCIATES

*/s/ Robert C. Gutierrez*
ROBERT C. GUTIERREZ
*Attorney for Plaintiff*
10090 Coors Blvd NW Ste A
Albuquerque, NM 87114
Telephone:    (505) 243-5566
Telecopier:    (505) 897-2279

17